UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CARL CULP and ROBERTA CULP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  1:19cv106 |
| | ) | |
| STEVE REED, in his official capacity as | ) | |
| Chief of the Fort Wayne Police Department, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>OPINION AND ORDER</u>

This matter is before the Court on a motion for summary judgment filed by the City

Defendants (Steve Reed, Whitney Woods, Stevan Schulien, Steve Ealing, Bradley Griffin, and

Robert Wilcox), on December 7, 2020.  The Plaintiffs filed a response to the motion on June 14,

2021, to which the City Defendants replied on June 21, 2021.

Also before the Court is a motion for summary judgment filed by the County Defendants

(David Gladieux, Shawn Lawhorn, Brian Jarboe, and Evan Gregory), on December 7, 2020.

Plaintiffs filed a response to the motion on June 14, 2021, to which the County Defendants replied

on June 28, 2021.

Also before the Court is a Motion to Strike Paragraphs 25 and 26 of Carl Culp's Affidavit,

filed by the City Defendants on June 21, 2021.  The Plaintiffs responded to the motion on July 6,

2021, to which the City Defendants replied on July 13, 2021.

For the following reasons, the City Defendants' motion for summary judgment will be

granted in part and denied in part; the County Defendants' motion for summary judgment will be

granted in its entirety; and the City Defendants' motion to strike will be denied.

<u>Summary Judgment Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Cicero v. Lewdco Sec. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts that there is a genuine issue for trial. *Matsushita Elec. Indus.*, 475 U.S. at 587.

The non-moving party cannot rely on conclusory allegations in affidavits to defeat a summary judgment motion. *Hites v. Patriot Homes, Inc.*, 904 F. Supp. 880, 882 (N.D. Ind. 1995); *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992). "The days are gone, if they ever existed, when the non-moving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).

<u>Discussion</u>

Plaintiffs, Carl Culp and his wife Roberta Culp, assert claims under Section 1983 against Fort Wayne police officers and Allen County police officers, alleging excessive force in violation of their Fourth and Fourteenth Amendment rights.  Plaintiffs also allege that all of the Defendants violated the Rehabilitation Act and the ADA. Additionally, Plaintiffs have pled state law claims of intentional infliction of emotional distress, negligent inflection of emotional distress, assault and battery, and criminal mischief against Defendants Woods and Schulien.

The basic facts, in the light most favorable to Plaintiffs, are as follows. Carl suffers from PTSD and depression due to childhood abuse.  Also, both of his legs have been amputated and he uses a wheelchair to get around.  He has prosthetic legs but uses them only for balance and for short distance transitions, such as to or from his wheelchair to the car.  Carl does not drive and relies on his wife, Roberta, for transportation.

To help treat his mental impairments, Carl regularly attended appointments at Parkview Physicians Group - Mind-Body Medicine, located at 6920 Pointe Inverness Way, Suite 120, Fort Wayne, Indiana.  On August 29, 2018, Roberta drove Carl to an appointment at Mind-Body Medicine. Roberta waited in the car with the couple's deaf German Shepherd, Kelsey, while Carl attended his appointment.  At the appointment, Carl spoke with a nurse practitioner, Sara Glassley. Ms. Glassley talked with Carl and then excused herself from the room, leaving Carl alone. Ms. Glassley had mistakenly determined that Carl was suicidal and in need of immediate intervention.

Carl was dismayed at the length of time Ms. Glassley was gone, and decided to leave the medical suite in his wheelchair so that he could return to his wife who was waiting in the car.

3

Unbeknownst to Carl, Ms. Glassley had called the City of Fort Wayne Police Department, Crisis Intervention Team, alleging that Carl had thoughts of suicide.[1]

Carl reached his Ford Escape and loaded his wheelchair into the hatch. Carl then used his prosthetic legs to transition around the car to its passenger seat. As Carl was walking along the car, Fort Wayne Police Officers Stevan Schulien and Whitney Woods approached him. According to the police report, Officers Schulien and Woods were dispatched on information that Carl was a wheelchair-bound double amputee, with a box cutter in a drawer at home, and that he had a suicide plan. They arrived on the scene at 4:55 P.M.

Officer Woods noted that, upon arrival, he observed a white male in a wheelchair behind a black vehicle.  After Carl put his wheelchair in the car and moved along the side of his car on his prosthetic legs, Officers Schulien and Woods approached Carl, and asked to speak with him. Carl politely declined to engage with Officers Schulien and Woods and continued his way to the passenger seat.

At this point, things became chaotic, not helped by the fact that it was storming out and pouring down rain. Carl testified in his deposition that the officers asked him to get out of the car but that he refused because he had done nothing wrong and it was difficult for him to get out of the car due to his prosthetic legs and the absence of anything to help him keep his balance. (Carl Culp Aff. at 13, 17; Carl Culp Dep. at 51). The officers did not take time to explain why they were there or to talk to Carl about his possibly suicidal state of mind. (Carl Culp Dep. at 52).

---

[1] Whether Carl was having suicidal thoughts at the time of his visit with Ms. Glassley is disputed.  Carl testified that Ms. Glassley asked him questions, mistakenly believed he was suicidal, and left the room. (Carl Culp Aff. at 4). Ms. Glassley testified that Carl had stated he had current thoughts of suicide, a specific current plan, and was close to carrying out that plan. (Glassley Dep. at 34).

There is no evidence that the officers asked Carl or Roberta if there were any weapons in the car or on Carl's person.  Carl is a big guy and did not want to fall by getting out of the car. He did not ask the officers for assistance getting out of the car and testified that he did not have time to ask for help before the officers began "whooping" on him. (Carl Culp Dep. at 52). Nor did the officers offer any assistance or assurance that he would be safe.  Carl became defiant and told the officers he "would like to see you try" to get him out of the car.  He braced himself against the doorjamb of the car.  The officers escalated the situation by pulling on Carl's shirt and hair and pulled his purse, which had a strap around his neck, until it broke.  The officers then told Carl they were going to tase him, and they did, which had no effect on him.

Without warning, Officer Woods then used his "chemical agent", which has been described as mace and/or pepper spray.  Roberta got out of the car after the spray was released, taking the dog with her. Carl grabbed the steering wheel with his left hand. Officer Schulien entered the driver side of the car and started hammer-fisting Carl's arm to get him to let go of the steering wheel.  Carl at some point let go of the steering wheel and the officer put handcuffs on Carl's wrist and began to try to push him out of the car, while Officer Woods pulled on him from the passenger side of the car.  Due to Carl's strength and size, the two officers were having trouble getting him out of the car, and called for backup. Other units from the Fort Wayne Police Department, the Allen County Sheriff's Department, and the Indiana State Police arrived.  In the meantime, Officers Wood and Schulien were able to remove Carl from the vehicle, put him face down in the rain and mud, and handcuffed him. Carl alleges that he struggled to breathe. The officers then propped him up on the curb in the rain.  Carl was handcuffed with three pairs of handcuffs and alleges that the handcuffs were too tight and causing pain, yet the officers refused

5

to loosen the handcuffs. Carl was taken by ambulance to Parkview Hospital Randallia.

The Plaintiffs allege that, due to the actions of the officers, Carl suffered physical and mental trauma such as heavy bruising to his body, and pain. Carl alleges that he continues to have pain, suffering, fear and mental anguish. Additionally, the officers allegedly damaged Carl's car, clothing, phone and other items. Roberta alleges that she suffered pain, fear, suffering, and mental anguish.

<u>City Defendants' Motion for Summary Judgment</u>

In support of their motion for summary judgment, the City Defendants first argue that they did not use excessive force or violate the Plaintiffs' constitutional rights. Excessive force claims stemming from an arrest or investigatory stop must be analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. M.S. Conner*, 490 U.S. 386, 395 (1989). This analysis requires an inquiry into "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. Courts must examine the reasonableness of the actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

The City Defendants focus on the fact that Carl refused to get out of the car when asked to do so. The Plaintiffs focus on the fact that the officers' actions escalated quickly, even before Carl was completely inside the car, and that the officers were beating on Carl for no apparent reason, cursing at him all the while.

The City Defendants have raised the affirmative defense of qualified immunity. The

defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir. 1993), reh'g denied. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The United States Supreme Court holds that if no constitutional right was violated, there is no necessity for further inquiries. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, if a violation could be made, the next step is to ask whether the right was clearly established; this inquiry must be undertaken in light of the particular circumstances of the case. *Id*. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation the officer confronted. *Id*.

Here, Carl has identified ample evidence that could yield to the reasonable inference that the actions of Officer Schulien and Officer Woods were in violation of the Fourth Amendment prohibition against unreasonable seizure. The evidence in favor of Carl shows that, without explaining the basis for demanding that Carl exit the car, Officer Schulien and Officer Woods started pulling Carl's hair and clothes. (Carl Culp Aff. at 11; Carl Culp Dep. at 51). Then the officers' actions escalated to the point they were hammer-fisting his arm, tasing him, pepper spraying him, dragging him out of the car, and handcuffing him. (Carl Culp Aff. at 12; Carl Culp Dep. at 56).

"A constitutional right is 'clearly established' for qualified-immunity purposes where [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that

7

what he is doing violates that right." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 731 (7ᵗʰ Cir.

2013). "A case holding that the exact action in question is unlawful is not necessary." *Alicea v.*

*Thomas*, 815 F.3d 283, 291 (7th Cir. 2016). With respect to qualified immunity, it is clearly

established that an officer cannot use more force than is reasonably necessary to execute an arrest.

*Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 529-30 (7th Cir. 2012). "It [is] also clearly established

that using a significant level of force on a non-resisting or a passively resisting individual

constitutes excessive force." *Alicea*, 815 F.3d at 292. "Permitting substantial escalation of force in

response to passive noncompliance would be incompatible with our excessive force doctrine and

would likely bring more injured citizens before our courts." *Abbott v. Sangamon County*, 705

F.3d 706, 730 (7th Cir. 2013).

The City Defendants claim that they had authority to detain Carl under Indiana Code

12-26-4-1, which provides, "A law enforcement officer, having reasonable grounds to believe that

an individual has a mental illness, is either dangerous or gravely disabled, and is in immediate need

of hospitalization and treatment, may do the following: (1) Apprehend and transport the individual

to the nearest appropriate facility." This statute grants "a law enforcement officer the discretion to

compel another's obedience to the police powers of the state as defined by its laws and

constitution, regardless of whether the person is suspected of committing a crime." *Estate of Jon*

*Savieo v. City of New Haven*, 824 N.E.2d 1272, 1276 (Ind. Ct. App. 2005).

This statute arguably does not apply to the facts at issue.  It is disputed whether Carl was

"in immediate need of hospitalization and treatment".  Police dispatch informed the officers that

Carl was suicidal with a plan to slit his wrists with a box cutter that he had at home. (Schulien Aff.

at 4).  However, Carl was not at home.  He was sitting in his car in the parking lot, in the

8

passenger seat. His wife was in the driver's seat and was totally compliant with all of the officers' requests. She turned off the car when instructed. She got out of the car when instructed. She got back in the car when instructed. There is no evidence that Carl had a box cutter in the car. No one ever asserted that he had any means to harm himself in the car. He did not have a gun, he did not have a knife, he had not taken an overdose of anything. While Carl may have been in need of hospitalization and treatment, it is debatable that the need was "immediate".

As a reasonable jury could find that the officers knew that Carl did not pose an immediate threat to himself, or anyone, summary judgment must be denied on the issue of the reasonableness of their use of force against Carl. Carl never struck any of the officers or attacked them in any way. He merely wanted to be left alone, and believed he had the right to be left alone as he had done nothing wrong.[2] Likewise, because a jury could find that Officers Wood and Schulien had no reason to believe that Carl was about to put himself or anyone else in immediate danger, and that their response to Carl's refusal to get out of the car was an unreasonable use of force, these two officers are not entitled to qualified immunity at this stage in the proceedings. *Smith v. Finkley* , No. 20-1754, 2021 WL 3660880 *12, 43 (7th Cir. Aug.18, 2021)(holding that factual disputes preclude a ruling on qualified immunity at the summary judgment stage but that the defense is preserved for later determination, and remains a legal decision for the district court); *Taylor v. City of Milford*, No. 20-1109 (7th Cir. Aug. 19, 2021)(holding that a reasonable jury could conclude that an officer violated Plaintiff's Fourth Amendment rights where Plaintiff did not pose an imminent threat to any officer, bystander, or himself); *see Estate of Escobedo v. Martin*,

---

[2] Although there is no specific evidence presented to the Court on this point, a reasonable inference from Carl's testimony is that he was unaware that talking with Ms. Glassley could give her cause to call the police, or give the police the right to forcibly detain him.

702 F.3d 388, 403-04 (7th Cir. 2012)(affirming the grant of qualified immunity after a jury finding on a factual dispute).

Accordingly, summary judgment will be denied with respect to Officers Wood and Schulien, as to Carl's claims of excessive force.[3]

Fort Wayne Police Officers Ealing, Griffin and Wilcox arrived at the scene at different times. Officer Ealing testified that Carl was on the ground when he arrived and he gave the officers extra handcuffs. Officer Ealing helped roll Carl over on his back and wiped the water from his face. Officer Griffin testified that Carl was already handcuffed when he arrived and was sitting upright on the ground. Officer Wilcox testified that when he arrived he saw the officers attempting to handcuff Carl.

Plaintiffs argue that these three officers failed to intervene or to help even though Carl complained multiple times. Plaintiffs assert that Carl had the right to be free from intentional infliction of pain while being handcuffed. Plaintiffs further argue that allowing the pepper spray to remain on Carl's face resulted in a violation of his Fourth Amendment rights.

The City Defendants argue that Plaintiffs have no claim against these officers as they did not use any force against the Plaintiffs. The City Defendants also contend that Plaintiffs do not have a claim based on failure to intervene. A duty to intervene only arises if a constitutional violation occurs in another officer's presence. *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). The City Defendants argue that even if there had been a constitutional violation, there was no realistic opportunity to intervene as these three officers arrived on the scene after Carl had

---

[3] To the extent that Roberta Culp is alleging a separate claim of excessive force, summary judgment is granted on that claim because there is no evidence that any force was used against her by anyone.

been removed from the vehicle. *Flores v. City of East Chicago*, 2017 WL 25414 (N.D. Ind. 2017) (officers had no realistic opportunity to intervene as a matter of law).  Plaintiffs do not dispute that Officers Ealing, Griffin and Wilcox did not use any force against either of them.  Additionally, there is no dispute that these three officers did not have a realistic opportunity to intervene.  They arrived at the scene after Carl was already out of the car and on the ground.  Once handcuffed, Carl was sat upright next to his car and subsequently loaded onto a stretcher and placed in an ambulance.  Accordingly, summary judgment will be granted in favor of Officers Ealing, Griffin and Wilcox on Plaintiffs' excessive force/failure to intervene claims.

Next, the City Defendants argue that they did not violate the Rehabilitation Act or the ADA.  In their Complaint, the Plaintiffs assert claims against "all defendants" under Section 504 of the Rehabilitation Act and under Section 202 of the Americans with Disability Act. The City of Fort Wayne is not a named defendant in this case. However, Plaintiff's have named "Steve Reed, in his official capacity, as Chief of the Fort Wayne Police Department" as a defendant.  Thus claims against Reed will be construed as claims against the City of Fort Wayne. Officers Whitney Woods, Stevan Schulien, Steve Ealing, Bradley Griffin, and Robert Wilcox, all are all named individually. However, "Title II of the ADA forbids causes of actions against defendants in their individual capacities." *Kennington v. Carter, et. al.*, 216 F. Supp. 2d 856, 859 (S.D. Ind. 2002). Likewise, individuals cannot be held liable under the Rehabilitation Act. *Mikulich v. Buncich*, 2109 WL 1014784 (N.D. Ind. 2019). Thus, summary judgment will be granted as to Officers Woods, Schulien, Ealing, Griffin and Wilcox on the ADA and Rehabilitation Act claims.

The Court will next consider Plaintiffs' claims against Chief Reed/City of Fort Wayne. Title II of the Americans with Disabilities Act states that "no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation and programs or activities provided by its public entity." 42 U.S.C. § 12131(2). A "public entity" includes "any State or local government," or "any department, agency, special purpose district, or other instrumentality of a State or local government." 42 U.S.C. § 12131(1).

"Claims under section 504 of the Rehabilitation Act are treated as 'functionally identical' and can be considered together with Title II claims." *King v. Hendricks Co. Commissioner*, 954 F.3d 981, 988 (7th Cir. 2020). Neither the United States Supreme Court nor the Seventh Circuit have decided whether Title II and the Rehabilitation Act apply to law enforcement investigations and arrests. In *King v. Hendricks Co. Commissioner*, the Seventh Circuit stated that like the First Circuit, the Seventh Circuit would assume, without deciding, that the ADA and the Rehabilitation Act apply to the officers' interactions with the plaintiff in that case, and the Seventh Circuit quoted the First Circuit's statement that "exigent circumstances may shed light on the reasonableness of an officer's actions". *Id*. at 988.

The Seventh Circuit also assumed without deciding that Hendricks County could be held vicariously liable under Title II for the officers' actions, and that "deliberate indifference" is the appropriate standard by which to analyze the institutional defendants' conduct.

Plaintiffs argue that when Officers Schulien and Woods arrived at the scene they told Carl

that "we don't want to beat the ass of a handicap man". Plaintiff contends that this is evidence of

discrimination. Plaintiffs further argue that because the officers repeatedly told Carl to "get out of

the fucking car", that they were being intentionally discriminatory. Plaintiffs also allege that the

officers failed to accommodate him because he told the officers that his prosthetic legs weren't

meant to get wet, yet the officers paid no attention. (Carl Culp Aff. at 26). Plaintiffs claim that the

officers damaged and mishandled Carl's prosthetic legs, and that this was an act of deliberate

indifference. (*Id*.).[4]

The City Defendants argue that, as in *King v. Hendricks County Commissioners*, there is

no evidence that "but for the alleged discrimination" on the basis of Carl's disability, the officers

would not have used the force that they did. Plaintiffs allege in paragraph 103 of the Complaint

that the Defendants' conduct violated the Rehabilitation Act and the ADA by the "refusal to

provide Carl with a reasonable accommodation". (Complaint at p.17). This claim fails. "In cases

alleging a failure to make reasonable accommodations, the defendant's duty to provide a

reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an

---

[4]  The City Defendants have filed a motion to strike paragraphs 24 and 26 of Carl Culp's affidavit. Paragraph 24 states: "The officers wouldn't rinse of[f] my eyes and face from pepper spray even though I asked and complained multiple times for help." Paragraph 26 states: "I told the officers my prosthetic legs weren't meant to get wet. The officers paid no attention. The officers damaged and mishandled my prosthetic legs." Defendants argue that Carl stated in his deposition that he had testified to everything that had happened during the incident, and did not mention that he asked multiple times to have the pepper spray wiped from his face and did not mention that his prosthetic legs could not get wet, were mishandled, and were damaged. A review of the deposition testimony shows that Carl stated "I think that covers it" when asked if he had testified about everything. (Carl Culp Dep. at 61). The Defendants argue that Carl is seeking to improperly "patch up" his deposition testimony with his affidavit testimony. However, as Carl's deposition testimony and affidavit testimony do not contradict each other and the statement "I think that covers it" is general and not a definite statement, the Court will not strike the paragraphs. *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016).

accommodation." *Rylee v. Chapman, et. al.*, 316 Fed. Appx. 901, 906 (11th Cir. 2009). At no point did Carl request any accommodation, including asking for help to get out of the car. In fact, Roberta admits in her deposition that she said to Carl "why don't you get out of the vehicle", indicating that she believed he could get out if he so desired. (Roberta Culp Dep. at12). Additionally, Officer Schulien and Officer Woods had just seen Carl stand up from his wheelchair and place the wheelchair into the back of his vehicle with no assistance. Therefore, the officers had no reason to believe that Carl was not able to stand up and get out of his vehicle on his own.

Plaintiffs fail to provide any evidence of intentional discrimination. Plaintiffs fail to show that the City Defendants used force against Carl because of his disability or that his disability was a significant factor in the officers' decision to use force. Plaintiffs fail to provide any evidence of a denial of services for Carl's disability. Plaintiffs fail to show that Carl made any request for accommodations and that the request was denied. Although Carl testified in his affidavit that he told the officers that his prosthetic legs weren't meant to get wet and that they took no action, this does not amount to asking for an accommodation, especially since Carl had already walked around the car in the pouring rain. *Windham v. Harris County, Texas*, 875 F.3d 229, 236-37 (5th Cir. 2017)("Thus, because the ADA does not require clairvoyance, the burden falls on the plaintiff to specifically identify the disability and resulting limitation, and to request an accommodation in direct and specific terms).  Therefore, as there is no evidence of discrimination or failure to accommodate, summary judgment will be granted in favor of Chief Reed/City of Fort Wayne on the ADA and Rehabilitation Act claims.

Next, Officers Woods and Schulien argue that they did not commit assault and battery against Plaintiffs, because they did not use unnecessary or excessive force.  As the question of the

14

legality of the force used against Carl is a jury question, the assault and battery question is also one for the jury. Likewise, whether Officers Woods and Schulien are entitled to qualified immunity on the state law claims, including claims of intentional infliction of emotional distress, negligent inflection of emotional distress, and criminal mischief, is a jury question for the reasons discussed above in the excessive force analysis.

Next, the City Defendants seek summary judgment on Plaintiffs' claim for punitive damages. The City Defendants argue that the evidence does not show that the officers acted with reckless or callous indifference to Plaintiffs' rights.   Again, this is a question for the jury, as a reasonable jury could conclude that the officers acted recklessly or with callous indifference to Carl's right to be free of unreasonable force.

In conclusion, summary judgment will be denied as to Officers Woods and Schulien on Carl's excessive force claim, and denied as to Officers Woods and Schulien on all of the state law claims with respect to both Plaintiffs. Summary judgment will be granted in favor of all the City Defendants on Roberta's excessive force claims.  Summary judgment will be granted as to Officers Ealing, Griffin and Wilcox as to all excessive force/failure to intervene claims.  Summary judgment will be granted in favor of all the City Defendants on all of the ADA and Rehabilitation Act claims.


<u>Allen County Defendants' Motion for Summary Judgment</u>

The Court will now turn to the Allen County Defendants' motion for summary judgment. Captain Lawhorn, Corporal Jarboe and Officer Gregory were called to assist in the incident at issue. Lawhorn arrived on the scene at approximately 5:12 P.M..  Jarboe and Gregory arrived on

the scene at approximately 5:13 P.M. At the time of their arrival, officers from the Fort Wayne

Police Department were already on site and interacting with Carl.  The Allen County officers

testified that they had absolutely no physical contact with either of the Plaintiffs and did not utilize

any force against them. None of the officers were present during the use of the taser, pepper spray

or strikes administered by other law enforcement officers.   Lawhorn and Gregory did observe

other officers removing Carl from his vehicle as they approached the scene.  Jarboe observed

other officers removing Carl from his vehicle and was in the vicinity of the vehicle on the

periphery of several officers at the time Carl was removed from the vehicle.  None of the three

officers restrained or otherwise interacted with Carl and they were not involved in his

transportation to Parkview Hospital.  In his deposition, Carl conceded that he did not have any

knowledge or evidence that Lawhorn, Jarboe or Gregory utilized any force against him at any

time. (Carl Culp Dep. at 107).  Likewise, Roberta has no recollection of observing any officer

employed by the Allen County Sheriff's Department ever using force against Carl.

(Roberta Culp Dep. at 38).

Plaintiffs acknowledge that the County officers arrived at the scene late, but claim that the

officers are liable for failing to intervene.  Plaintiffs contend that the officers should have

prevented the Fort Wayne officers from handcuffing Carl, and should have wiped the pepper

spray from his face.  Plaintiffs rely, in part, on an in-car video from Officer Woods' vehicle.  The

video shows two Allen County officers rushing toward the Culps' vehicle several minutes after

the initial interaction between Carl and the Fort Wayne officers. The recording does not show any

use of excessive or unreasonable force by any Allen County officer.  Plaintiffs argue that the video

"appears" to show Officer Jarboe yelling, reaching toward the vehicle, and moving to place

16

someone or something on the ground. The Court has repeatedly reviewed the video, and due to the way the cars are parked, it is impossible to tell which officers are actually interacting with Carl and which ones are simply standing by.  In fact, Carl is not actually visible in the video at any time. As there is no evidence that the Allen County officers used any force, let alone excessive force, against either of the Culps, summary judgment will be granted in favor of all of the Allen County defendants on the excessive force claims.

An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and (4) the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994).

In the present case, it is undisputed that Captain Lawhorn, Corporal Jarboe, and Officer Gregory were not present for the initial interactions between Carl and Officers Schulien and Woods. It is during that interaction that Carl alleges that he was subjected to strikes and the use of a taser and OC/pepper spray. Because Captain Lawhorn, Corporal Jarboe, and Officer Gregory were not present for that use of force, they cannot be responsible under a failure to intervene theory as they had no opportunity to prevent the alleged use of excessive force.

Plaintiffs allege that Captain Lawhorn, Corporal Jarboe, and Officer Gregory failed to intervene to prevent Carl from being removed from the vehicle, being placed on the ground, and his subsequent handcuffing. As noted, Captain Lawhorn and Officer Gregory arrived and were approaching the vehicle as other officers were removing Carl from the vehicle. There is no

indication that they had any opportunity to intervene or otherwise prevent Carl's removal from the vehicle and cannot be held liable for a failure to intervene. Similarly, Corporal Jarboe was present, but on the periphery of several other officers as Carl was being removed from the vehicle. There is no indication that Corporal Jarboe had any opportunity or ability to prevent Carl's removal from occurring. Plaintiffs have not developed any facts to support their claim that Corporal Jarboe had any realistic opportunity to intervene.   Accordingly, summary judgment will be granted in favor of the Allen County Defendants on Plaintiffs' excessive force/failure to intervene claims.

Plaintiffs next assert that Sheriff Gladieux is liable for violations of Section 504 of the Rehabilitation Act and Section 202 of the Americans with Disabilities Act, but fail to identify a corresponding single action or inaction by any officer employed by the Allen County Sheriff's Department that constituted a violation of either act. Plaintiffs appear to concede that their claims must be dismissed as to Captain Lawhorn, Corporal Jarboe and Officer Gregory as individuals cannot be held liable for such claims. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No 303*, 783 F.3d 634, 644 (7th Cir. 2015)..

The essence of ADA and Rehabilitation Act claims is discrimination and denial of access to jobs or programs because a person is disabled. *See Perrey v. Donahue*, Cause No. 3:06-CV-617, 2007 U.S. Dist. LEXIS 88930, 2007 WL 4277621, at * 4 (N.D. Ind. Dec. 3, 2007). Here, the Plaintiffs have not shown that, but for his disabilities, the incident Carl complains of would not have occurred or would have played out differently. Carl was not detained because of his disabilities nor was he denied a  reasonable accommodation. None of the Allen County Sheriff's Department officers restrained or otherwise restricted Carl's movement. None of the Allen

County Sheriff's Department officers handcuffed Carl. None of the Allen County Sheriff's Department officers undertook any action to have "caused" or "participated in" any detention and cannot be held liable under that theory. *See Jenkins v. Keating*, 147 F.3d 577, 583-84 (7th Cir. 1998).

Plaintiffs also allege that "an Allen County officer appears to yell at Carl to get out of the car in the video . . . [and] watched if not helped put Carl, a person with a disability . . . face down in the mud and pushed on his back."  Plaintiffs also assert that officers failed to intervene and allowed Carl's prosthetic legs to get wet.  However, Plaintiffs invite speculation as to the identity and conduct of any particular officer.  In any event, the alleged conduct does not trigger the ADA or Rehabilitation Act as the conduct is not related to Carl's disability. Plaintiffs have failed to link the allegedly discriminatory conduct with Carl's disability. Plaintiffs argue that Carl was disabled and leap to the conclusion that the Allen County Sheriff's Department discriminated against him. Plaintiffs  have not presented evidence that any officer of the Allen County Sheriff's Department intentionally discriminated against Carl or were deliberately indifferent to his disability.

Plaintiffs appear to suggest that Sheriff Gladieux somehow bears the burden of proving his policies are appropriate in this particular instance. Defendants note that Plaintiffs were provided with the Sheriff's Department policies and procedures during the course of discovery and have made no showing that any policy or procedure was the moving force or cause of any alleged deprivation sustained by Plaintiffs in this case. It is the Plaintiffs' burden to demonstrate that an express policy causes a deprivation. *See Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Plaintiffs have presented no evidence regarding policies or alleged deficiencies in this case. Consequently, Sheriff Gladieux is entitled to summary judgment as a matter of law on Plaintiffs'

ADA and Rehabilitation Act claims.

In sum, the Allen County Defendants will be granted summary judgment as to all of Plaintiffs' claims.

Conclusion

On the basis of the foregoing, The City Defendants' motion for summary judgment [DE 48] is hereby GRANTED IN PART AND DENIED IN PART as follows:

(1) Summary judgment is DENIED as to Officers Woods and Schulien on Carl Culp's excessive force claims.

(2) Summary judgment is DENIED as to Officers Woods and Schulien on all of the state law claims with respect to both Plaintiffs.

(3) Summary judgment is GRANTED in favor of all of the City Defendants on Roberta Culp's excessive force claims.

(4) Summary judgment is GRANTED as to Officers Ealing, Griffin and Wilcox as to all excessive force/failure to intervene claims.

(5) Summary judgment is GRANTED in favor of all the City Defendants on all of the ADA and Rehabilitation claims.

Further, the City Defendants' motion to strike [DE 93] is hereby DENIED.

Further, the Allen County Defendants' motion for summary judgment [DE 46] is hereby

GRANTED in its entirety with respect to all of Plaintiffs' claims.


 Entered: September 9, 2021.


                                        s/ William C.  Lee
                                        William C. Lee, Judge
                                        United States District Court