IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

FORT WAYNE DIVISION

| | | |
|---|---|---|
| CARL CULP and ROBERTA CULP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:19-CV-106-JD |
| | ) | |
| WHITNEY WOODS and | ) | |
| STEVAN SCHULIEN, | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFFS' TRIAL BRIEF

Plaintiffs, Carl Culp and Roberta Culp, respectfully, submits this brief in accordance with this Court's Order [Doc. No. 117, p. 4, § E].

**I.    Factual Background.**

On August 20, 2018, Fort Wayne police officers were dispatched to Mind-Body Medicine, 6920 Pointe Inverness Way, Suite 120, Fort Wayne, Indiana, to investigate Carl Culp, an allegedly suicidal wheelchair-bound double-amputee. Dispatch advised he had a box cutter at home in a drawer. Unfortunately, for Carl, the officers that first arrived in the parking lot of Mind-Body Medicine, the Defendants, Officers Stevan Schulien and Whitney Woods, had no patience to investigate the allegation and had no patience with Carl or his wife, Roberta.

Officers Schulien and Woods approached Carl as he was working his way toward the passenger seat of his parked car. Carl had just placed his wheelchair in the trunk of his car and was using his prosthetic legs (which he only uses for transition) to balance his way to the seat. Carl politely declined the officer's request to speak with him with a "no thank you".

Thereafter, Carl reached the passenger seat. Carl got his left prosthetic leg in the car when one of the officers grabbed his arm and said, "we don't want to beat the ass of a handicap man" and without warning Officers Schulien and Woods unleashed an excessive violent beating upon Carl that included tasing, pepper spraying, hammer fisting, tearing at his hair, tearing at his clothes, applying other pain compliance techniques, and ripping a cloth bag from around Carl's neck with such force as to tear the strap in half. Carl resisted the officers' unwarranted and excessive violent beating by trying to stay in the car. And from that point on, Carl acted in self-defense and in fear of harm by trying to avoid being dragged from the car by the officers.

Even though, the officers initiated an unwarranted excessive unlawful beating there is no allegation that Carl ever defended himself other than trying not to be pulled from the car by holding on to the steering wheel at times and by bracing himself against the b-pillar of the car. There was neither a fight nor a flight. There is no allegation Carl hit the officers, swung at the officers, or that the officers thought Carl had a weapon.

Eventually, numerous officers extracted Carl from the car. When the officers did drag Carl from the car one of Carl's worst fears came true, which is that the officers sat on his back and shoved his face in the mud and water. (Doc. No. 89-1, dep. p. 55). Carl was not comfortable getting out of the vehicle because he believed he was putting his health at risk by doing so. (Doc. No. 89-1, dep. p. 59). It was pouring rain that day. (Doc. No. 89-3, ¶ 22). Carl yelled, "I can't breathe." The officers handcuffed his hands behind his back so tightly that he lost feeling in his left hand and then sat him up on a curb. (Doc. No. 89-3, ¶ 23). The officers refused to loosen the cuffs for Carl. (Doc. No. 89-3, ¶ 23). While Carl was in handcuffs both Fort Wayne and Allen County officers were there. (Doc. No. 89-2, dep. p. 40). The officers wouldn't rinse Carl's eyes and face clean of the pepper spray even though he asked, and he complained multiple times for

help. From thereon – Carl was transported by medics and Officer Schulien to Parkview Randalia for a mental health hold.

## II.     Brief Procedural Background.

Carl and Roberta Culp filed a complaint (Doc. No. 1) against numerous Fort Wayne police officers and numerous Allen County Sheriff's Department officers. The complaint alleged claims, against various officers, of: (1) excessive force under 42 U.S.C. § 1983 in violation of the Fourth and Fourteenth Amendments; (2) violations of the Rehabilitation Act and of the Americans with Disabilities Act; (3) state law claims for intentional inflictions of emotional distress, negligent infliction of emotional distress, assault and battery, and criminal mischief. The Culps sought compensatory damages, treble damages, punitive damages, attorneys' fees, and damages for pain and suffering.

Fort Wayne and Allen County, subsequently, moved for summary judgment against the Culps on all their claims. The Honorable Judge Christopher Lee decided the summary judgment motions and held that: (1) summary judgment was appropriate on all claims for Allen County; (2) the Court could not find at this time that Defendants Stevan Schulien and Whitney Woods were entitled to qualified immunity; (3) summary judgment should be denied for claims of excessive force, used against Carl Culp, by Defendants Stevan Schulien or Whitney Woods; and (4) summary judgment should be denied for all state law claims by both Roberta and Carl Culp against Defendants Stevan Schulien or Whitney Woods[1]. (Doc. No. 102, p. 20).

---

[1] Carl and Roberta Culp also brought a claim of negligent infliction of emotional distress. On summary judgment – the Culps conceded that the claim was likely brought in error. However – the Court failed to acknowledge this concession and ruled that both Roberta and Carl Culp were free to proceed on all state law claims. See Doc. No. 102, pp. 15 & 20 (stating "whether Officers Woods and Schulien are entitled to qualified immunity on the state law claims, including claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and criminal mischief, is a jury question" and "[s]ummary judgment is DENIED as to Officers Woods and Schulien on all of the state law claims with respect to both Plaintiffs."). Plaintiffs believe the negligent infliction of emotional distress claim should not go forward even though the Court did not acknowledge their concession. Plaintiffs believe that their claim for intentional infliction of emotional distress and criminal mischief could still be properly tried,

### III.     Issues to be tried and the elements of the claims involved in the action.

Issue No. 1 – Whether Whitney Woods or Stevan Schulien used excessive force against Carl Culp on August 20, 2018.

Elements of Proving Excessive Force

In order to prove the unconstitutional use of force, Carl Culp must prove that: (1) the officers employed excessive force against him; and (2) at the time the excessive force was employed, the officers were acting under color of law. *Federal Civil Jury Instructions of the Seventh Circuit,* § 7.09. "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). This inquiry involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396.

Factors relevant to the inquiry include "'(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009) (alterations in original) (quoting *Graham*, 490 U.S. at 396). "The dispositive question is whether the officer behaved in an objectively reasonable manner." *Padula v. Leimbach,* 656 F.3d 595, 602 (7th Cir. 2011).

---

under the Court's summary judgment decision, as Plaintiffs believe cases in this Circuit interpreting Ind. Code § 34-13-3-3(8) to bar the claims of intentional infliction of emotional distress and criminal mischief ignore the plain meaning of the Indiana Tort Claims Act by limiting state law claims to assault, battery, false arrest, and false imprisonment. Ind. Code § 34-13-3-3(8) is being construed too narrowly. Generally, it is the rule that government is liable for its tortious conduct under Ind. Code § 34-13-3-3 and immunity is to be construed as a limited exception to the rule. *Ladra v. State*, 177 N.E.3d 412, 416-17 (Ind. 2021). However – in an effort to avoid confusing the jury by simultaneously claiming that Officers Woods and Schulien were working under the color of state law and that they also acted outside the scope of their employment in certain matters, Plaintiffs will forego proving their claims of intentional infliction of emotional distress and criminal mischief.

*Graham* instructs the Court to consider whether the suspect was actively resisting. Force may be justified based on the suspect's level of resistance; active resistance may justify more force than passive resistance or no resistance. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 730 (7th Cir. 2013). Willful noncompliance amounts only to passive resistance requiring minimal use of force. *Phillips v. Community Ins. Corp*, 678 F.3d 513, 524 (7th Cir. 2012).

Force is only reasonable when it is proportional to the threat posed. *Alicea v. Thomas*, 815 F.3d 283, 288 (7th Cir. 2016). An officer may not use significant force on such a non-resisting or passively resisting suspect. *Id.* at 292. "It is clear . . . that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). Deploying a taser represents significant force. *Abbott*, 705 F.3d at 732. The Seventh Circuit has recognized that a person has a right to be free from intentional infliction of pain during law enforcement handcuffing incidents. See *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009). Allowing the pepper spray to remain on plaintiff's face resulted in a serious governmental intrusion of Fourth Amendment rights. See *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1130-31 (9th Cir. 2002); *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000).

Under *Graham*, the Court must analyze each discrete use of force at the time the force was applied. Timing is a crucial component of excessive force claims. Failing to follow commands is not "active resistance" and does not constitute the type of struggle that warrants significant use of force. *Stevens v. City of South Bend*, 2017 LEXIS at * 6 (N.D. Ind. Aug. 2017). "Passive resistance" includes failing to comply with a verbal command. *Becker v. Elfreich*, 821 F.3d 920, 927 (7th Cir. 2016).

When the Plaintiff is just a potential danger to himself and not a danger to others, it is easier to find in favor that excessive force was used. See *Williams v. Indiana State Police Dep't*,

5

797 F.3d 468, 484-45 (7th Cir. 2015) (denying qualified immunity where the plaintiff "posed a potential threat to himself, but there were no facts indicating that he was a threat to others"); *Todero v. Blackwell*, 383 F. Supp. 3d 826, 835-36 (S.D. Ind. 2019) ("Danger to only a suspect cannot justify force in the same way that danger to others can."). A person's apparent condition is relevant to the question of whether an officer used a reasonable amount of force against him. *McAllister v. Price*, 615 F.3d 877, 883 (7th Cir. 2010). Additionally, the extent of the injury is a relevant factor in determining whether force was excessive. *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008).

Here, Fort Wayne used excessive force right off the bat on a very vulnerable person. Carl is a disabled paraplegic double-amputee that uses a wheelchair. (Doc. No. 89-3, ¶ 2). He only uses prosthetic legs for short transitions. (Doc. No. 89-3, ¶ 2). He posed no flight risk. There is no allegation that Carl was a danger to anyone other than possibly himself. Initially, Roberta Culp got out of the car and asked the officer what was going on. (Doc. No. 89-4, ¶ 4). The officer told her to get back into the car and she did. (Exhibit 4, ¶ 5). Fort Wayne says, "Officer Woods was concerned as he did not know if Mrs. Culp would drive off." (Doc. No. 49, p. 5). If the officers were worried that Roberta Culp was going to drive off with Carl why did they order her back into the car? Moreover, the record undisputedly shows that Roberta Culp obeyed every officers' command. There was no reason to believe Roberta would drive off with Carl.

What had Carl done to deserve his beating? As Carl approached the passenger seat, he saw a Fort Wayne police officer approaching him who he believed was Officer Woods and the officer said, "May I speak with you?" (Doc. No. 89-3, ¶ 8; Doc. No. 89-1, dep. p. 49). Carl said, "No, thank you." (Doc. No. 89-3, ¶ 9). He proceeded to the passenger seat of his vehicle where he attempted to sit down. (Doc. No. 89-3, ¶ 9; Doc. No. 89-1, dep. p. 50). Carl got his left

prosthetic leg in the car when one of the officers grabbed his arm and said, "we don't want to beat the ass of a handicap man." (Doc. No. 89-3, ¶ 10; Doc. No. 89-1, dep. pp. 50-51, 57-58). Here is where timing is key. What happened next? Immediately and barely before Carl was partially seated in the passenger seat of his car without any warning Officers Schulien and Woods started pulling Carl's hair and clothes. (Doc. No. 89-3, ¶ 11; Doc. No. 89-1, dep. p. 51). Officer Schulien also ripped a "purse" off of Carl's neck with such force as to break the strap. (Doc. No. 89-1, dep. p. 52, 56; Doc. No. 89-7, dep. p. 41). The officers commenced with beating Carl, pulling on him, and hammer fisting him. (Doc. No. 89-3, ¶ 12; Doc. No. 89-1, dep. p. 56). Roberta witnessed the officers beating Carl. (Doc. No. 89-4, ¶ 4). The officers were yelling repeatedly "get out of the fucking car." (Doc. No. 89-3, ¶ 12). Carl has trouble transitioning out of the car because of his disability. (Doc. No. 89-3, ¶ 13; Doc. No. 89-4, ¶ 9; Doc. No. 89-1; dep. pp. 51-52). Officer Schulien's commentary aligns with Carl's testimony.

| | |
|---|---|
| Unknown officer: | So what what he was a suicide threat is that what it was? |
| Officer Schulien: | That's what they called it. *We hadn't had the opportunity to actually talk to him yet.* |
| Unknown officer: | Right. |
| Officer Schulien: | *He was getting ready to come out and get in the car. He obviously wasn't going to talk to us or listen to us.* |

(Doc. No. 89-5, video excerpt of minutes 20:34-21:07 from Officer Woods' car camera file name "Schulien Remarks").

Fort Wayne states that Officers Woods and Schulien did not have the opportunity to pat Mr. Culp down for weapons early on. (Doc. No. 49, p.6). If they were concerned about weapons surely they would have searched his car or his person before placing him in an ambulance full of civilian medics and taking him to a hospital full of doctors, nurses, and members of the public.

They did not. (Doc. No. 89-6, dep. p. 110; Doc. No. 89-7, dep. pp. 56-57). In every situation a police officer encounters it might be possible a person has a weapon, but unless there's a particular reason to believe the suspect is armed, force may not be justified. See, *Ellis v. Wynalda*, 999 F.2d 243, 246-47 (7th Cir. 1993).

Moreover, it was not objectively reasonable to tase, pepper spray, and hammer fist Carl for teetering to the passenger side of his car on his prosthetic legs and saying, "no thank you". Nor was it objectively reasonable to keep beating a paraplegic double-amputee for failing to follow commands to "get out of the fucking car." There is a very clearly established right in the Seventh Circuit to be free of excessive force when a suspect does not resist arrest prior to the officers' use of excessive force. *Morfin v. City of E. Chicago*, 349 F.3d 989 (7th Cir. 2003). Saying "No, thank you" in response to a police officer's inquiry of "May I speak with you?" is a constitutionally protected right. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (explaining that the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all). It was Carl's right to politely decline to speak with the officers and then attempt to sit down in his car.

There was no resistance from Carl at the time the officers commenced their unlawful beating by grabbing Carl's arm, tearing at his clothes and hair, ripping a purse from his neck, beating him with fists, applying other pain compliance techniques, and then tasing and pepper spraying him. All Carl had done was decline to speak with the officers and there is no evidence that anyone suspected him of being a danger to anyone other than himself. Moreover, Carl's subsequent resistance to the officers' beating was lawful, measured, and reasonable as Carl did nothing more than brace himself against the b-pillar of the car and attempt to hold onto the steering wheel in an effort to avoid injury. Indiana recognizes the right to defend against a police

officer's use of excessive force. *Plummer v. State*, 34 N.E. 968, 969-70 (Ind. 1893). If an officer uses excessive force in making an arrest, the person can repel force by force in the reasonable exercise of self-defense. *Id.*

After the other officers arrived on the scene, they pulled Carl from the car, and he came out of the car face down on the ground. (Doc. No. 89-3, ¶ 20). An officer sat on Carl's back and shoved his face in the mud and water. (Doc. No. 89-3, ¶ 21). It was pouring rain that day. (Doc. No. 89-3, ¶ 22). Carl yelled, "I can't breathe." (Doc. No. 89-3, ¶ 22; Doc. No. 89-5, file name "AC Involvement"; Doc. No. 89-6, dep. p. 94). No objectively reasonable officer puts a large-bodied paraplegic double-amputee face down in the water, knees him in the back and puts handcuffs on him all while he yells "I can't breathe".

The officers sat Carl up and handcuffed him behind his back so tightly that he lost feeling in his left hand. (Doc. No. 89-3, ¶ 23). The officers refused to loosen the cuffs for Carl when he complained. (Doc. No. 89-3, ¶ 23). The officers wouldn't rinse Carl's eyes and face clean of the pepper spray even though he asked, and he complained multiple times for help. (Doc. No. 89-3, ¶ 24). A person has a right to be free from intentional infliction of pain during law enforcement handcuffing incidents. Allowing pepper spray to remain on a plaintiff's face results in a serious governmental intrusion of Fourth Amendment rights.

Moreover, at this point in time, Carl, again, who is an overweight paraplegic double-amputee was seated on the ground in the pouring rain and mud. There was zero chance of flight. The force used was excessive. A person's apparent condition is relevant to the question of whether an officer used a reasonable amount of force against him.

The actions of Officers Woods and Schulien caused much mental trauma for Carl. Dr. Daniel Nusbaum, who is a medical doctor board certified in neurology and psychiatry opined in

his report that the life disrupting symptoms directly caused by the brutality of the police have made life for Carl Culp a living Hell, noting that it was probably an understatement and that the police officers' actions did not save Carl Culp's life but that in fact the situation for Carl with the police was life damaging and that the officers' action contributed to Carl's job loss.

It is not anticipated that Officers Woods or Schulien will claim that they were not acting under the color of state law as that is not something they briefed on summary judgment.

Issue No. 2 – Whether Whitney Woods or Stevan Schulien committed assault and battery against Carl or Roberta Culp on August 20, 2018.

Elements of Proving Assault and Battery

An assault occurs when: (1) one person performs an act with the intent to cause: (a) harmful or offensive contact with another person or a third person, or (b) the fear that harmful or offensive contact is about to occur, and (2) the act of the first person has caused the other person to have a reasonable fear that the contact is about to occur. *Indiana Model Civil Jury Instructions* § 3137.

To recover damages caused by assault, Carl Culp or Roberta Culp must prove by the greater weight of the evidence that: (1) Whitney Woods or Stevan Schulien acted with the intent to cause: (a) harmful or offensive contact with Carl Culp, or (b) Carl Culp's fear that harmful or offensive contact is about to occur, and (2) Whitney Woods' or Stevan Schulien's acts caused Carl Culp or Roberta Culp to reasonably fear that the contact was about to occur. *Indiana Model Civil Jury Instructions* § 3139.

For assault, nominal damages are presumed, and compensatory damages are to be proved by a preponderance of the evidence. *Raess v. Doescher*, 883 N.E.2d 790 (Ind. 2008).

A battery is the reckless, knowing, or intentional unauthorized touching of a person in a rude, insolent, or angry manner. *Indiana Model Civil Jury Instructions* § 3141. To constitute

10

battery, the act must be willfully committed, but any touching, however slight, may constitute an assault and battery. *Cohen v. Peoples*, 220 N.E.2d 665, 667 (Ind. Ct. App. 1966). A battery may also be recklessly committed where one acts in reckless disregard of the consequences, and the fact the person does not intend that the act shall result in an injury is immaterial. *Mercer v. Corbin*, 20 N.E. 132, 133 (Ind. 1889). Even though the pepper spray was not a direct hit to Roberta, battery can occur for indirect actions. *Luther v. State*, 98 N.E. 640, 641-42 (Ind. 1912) (stating the taking a hold of clothes or the hitting of a horse attached to carriage where another person is thrown is sufficient to be battery). And – it matters not that the pepper spray was intended for Carl because it has long been held the fact the defendant did not intend touch for the victim but instead accidently harmed another is not a defense. *D.H. v. State*, 932 N.E.2d 236, 238 (Ind. Ct. App. 2010).

To recover damages for battery, Carl or Roberta Culp must prove by the greater weight of the evidence that Whitney Woods or Stevan Schulien touched Carl or Roberta Culp: (1) recklessly or intentionally, (2) in a rude, insolent, or angry manner, and (3) without Carl or Roberta Culp's authorization. *Indiana Model Civil Jury Instructions* § 3143. As with assault, the law presumes nominal damages with battery and compensatory damages are to be proved by a preponderance of the evidence.

<u>Issue No. 3 – Whether Carl Culp is entitled to compensatory damages as a result of a violation of his Fourth Amendment Constitutional rights or state law rights and, if so, what amount should that be.</u>

<u>Elements of Proving Compensatory Damages</u>

A jury decision must be based on the evidence and not on guess or speculation. However, damages need not be proven to a mathematical certainty. *Indiana Model Civil Jury Instructions* § 701. "Damages for pain and suffering are of necessity a jury question which may not be reduced

to fixed rules and mathematical precision." *Dee v. Becker*, 636 N.E.2d 176, 178 (Ind. Ct. App. 1994).

Carl or Roberta Culp must prove their damages by a preponderance of the evidence. The award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure. A jury should consider the following types of compensatory damages, and no others: (1) The physical and mental and emotional pain and suffering and loss of a normal life that Carl or Roberta Culp has experienced and is reasonably certain to experience in the future. No evidence of the dollar value of physical or mental and emotional pain and suffering or loss of a normal life needs to be introduced. There is no exact standard for setting the damages to be awarded on account of these factors. The jury is to determine an amount that will fairly compensate Carl or Roberta Culp for the injury the have sustained; (2) The reasonable value of property damaged or destroyed; (3) The wages, salary, profits, earning capacity that Carl Culp has lost and the present value of the wages, salary, profits, earning capacity that Carl Culp is reasonably certain to lose in the future because of his diminished ability to work. *Federal Civil Jury Instructions of the Seventh Circuit*, § 7.26. The aggravation of a pre-existing injury or condition is also a factor in determining damages. *Indiana Model Civil Jury Instructions* § 703.

Even if no discernable consequential injuries are found, damages may be awarded for the violation of a substantive constitutional right. *Lenard v. Argento*, 699 F.2d 874, 889 (7th Cir. 1983).

The recent report of vocational expert Doctor Barkhaus indicates that it is his opinion that Carl suffered wage loss ranging between $355,299 and $438,257 because of the incident. Dr.

Daniel Nusbaum, who is a medical doctor board certified in neurology and psychiatry, testifies that: (1) the events that occurred with the Fort Wayne Police Department and the Allen County Sheriff's Department enhanced the symptoms of Carl's post-traumatic stress disorder; (2) the inaction of certain officers at the scene of the incident that stood around or watched led to reactivation of mental trauma for Carl; (3) the wording of his own expert report that "the life disrupting symptoms directly caused by the brutality of the police have made life for Carl Culp a living Hell" was probably an understatement; (4) Carl's shoulder symptoms indicate partial tear of the subscapular component of the rotator cuff; and (5) concluded that the police officers' actions did not save Carl Culp's life and that in fact the situation for Carl with the police was life damaging.

Carl has compensatory damages for pain, suffering, indignity, anxiety, fear, worry, and emotional suffering and/or distress. Carl has property damage around the amount of $2,000 for a broken cell phone, torn clothes, torn bag, and damaged car.

Issue No. 4 – Whether Roberta Culp is entitled to compensatory damages as a result of a violation of her state law rights and, if so, what amount should that be.

Elements of Proving Compensatory Damages

See elements as outlined in Issue No. 3. Roberta experienced pain from being pepper sprayed. And – because of the incident with the officers she has felt emotional distress and has to deal with Carl's various incident related issues. She has damages relating to pain and suffering, indignity, anxiety, fear, worry, and emotional suffering and/or distress.

Issue No. 5 – Whether Carl Culp is entitled to punitive damages as a result of a violation of his Fourth Amendment Constitutional rights, and if so, what amount should that be.

Elements of Proving Punitive Damages

Carl Culp must prove by a preponderance of the evidence that punitive damages should be assessed against Whitney Woods or Stevan Schulien. The jury may assess punitive damages only if the jury finds that the conduct was malicious or in reckless disregard of Carl Culp's rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff. Conduct is in reckless disregard of Plaintiff's rights if, under the circumstances, Defendant simply did not care about Plaintiff's safety or rights. If the jury finds that punitive damages are appropriate, then the jury must use sound reason in setting the amount of those damages. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes described, but should not reflect bias, prejudice, or sympathy toward any party. In determining the amount of any punitive damages, you should consider the following factors: (1) the reprehensibility of Defendants' conduct; (2) the impact of Defendants' conduct on Plaintiff; (3)  the relationship between Plaintiff and Defendants; (4) the likelihood that Defendants would repeat the conduct if an award of punitive damages is not made; and (5) the relationship of any award of punitive damages to the amount of actual harm the Plaintiff suffered. *Federal Civil Jury Instructions of the Seventh Circuit,* § 7.28.

The facts as outlined under Section III, Issue No. 1 of this brief indicate Officers Woods and Schulien recklessly disregarded Carl Culp's federally protected rights.

**IV.    Stipulations.**

The parties have no stipulations at this time, but Plaintiff is working toward obtaining stipulations and will inform the Court of any such progress.

**V.    Evidentiary questions and other legal issues anticipated to arise at trial.**

Issue No. 1 – See Carl and Roberta Culp's Motion in Limine and Brief in Support thereof filed December 6, 2022.

Issue No. 2 – Roberta and Carl Culp would like to request a spoliation instruction, and if not successful request the right to renew such request, depending on further facts potentially elicited at trial. The party moving for the spoliation instruction bears the burden of proving that a party intentionally destroyed the evidence in bad faith. *Bracey v. Grondin*, 712 F.3d 1012, 1018-19 (7th Cir. 2013). The crucial element is the reason for the destruction. *Id.* at 1019. A party destroys evidence in bad faith when it does so for the purpose of hiding adverse information. *Id.*

Officers Woods' and  Schulien's squad cars were both equipped with in-car cameras that had record after the fact technology. When functioning properly, the in-car cameras are always recording when the cars are turned on. There are several ways that the video recordings are marked to be saved: (1) when the emergency red/blue lights are activated on the car; (2) when an officer presses his mic button; (3) when the officer chooses to hit the record button on the camera; or (4) the video can later be selected to be saved. (Dep. Officer Woods, pp. 13-15). The officers are supposed to record after the fact when they are in a use of force situation. *Id.* at 15. Fort Wayne has policy that states, "It shall be the policy of the department to mandate the recording ***all actual or potential suspect encounters***, including: […] mental health (CIT) investigations." (Exhibit 1, p. 2) (emphasis in original). Dash camera videos are to be retained for at least 190 days, and if a tort claim is filed, the videos are to be retained for three years after the action accrued. (Exhibit 2, p. 6). Plaintiffs timely filed a notice of tort claim.

Here Officer Woods' car was on and recording during the initial encounter with Mr. Culp. Yet – the video of Officer Woods' car driving to and approaching the scene and parking behind Officer Schulien's car is missing and as such the video of Carl Culp and the officers' initial interactions with Mr. Culp are missing. If the initial video from Officer Woods' car were available, it would show how the officers approached Mr. Culp and started almost immediately

15

beating Mr. Culp. Here the entire beginning of the encounter is missing. The video begins at the time Officer Woods hits his mic button, which is when Mr. Culp was already seated in the vehicle and after the officers had started beating Mr. Culp without provocation. At the time of activation of the video, the officers were engaged in tasing and pepper spraying Mr. Culp. Whitney Woods could have saved the initial encounter, which would have shown the officers' timing and approach of Mr. Culp. Some of Whitney Woods' deposition is as follows:

> Q.    Now how -- if you wanted to get the video that existed of you and Officer Woods (sic) approaching Carl Culp, how would you have set that up to happen?
>
> A.    Of us approaching him?
>
> Q.    Yes.
>
> A.    I'd record after the fact…
>
> . . .
>
> Q.    But if you wanted that time frame, you could have recorded after the fact?
>
> A.    Correct.
>
> . . .
>
> Q.    Okay. So you get to choose what becomes evidence with record after the fact? You can broaden the scope of what was initially recorded; is that correct?
>
> MS. TRIER:   Just gonna object to the use of the word "evidence" in that question. If you can answer. He is not deciding what's gonna be evidence.
>
> A.    If I needed more for evidence I can record after the fact.

(Dep. Officer Woods, pp. 17-18).

Officer Woods' squad car was parked behind Officer Schulien's squad car. Officer Schulien's car was parked directly behind the Culps' car. The video from officer Schulien's

car would have had the best vantage point to capture video of the initial encounter with Mr. Culp, yet that video is missing too. In response to an interrogatory asking why the video at the scene was not recorded – Officer Schulien responds with three words, "shut car off". The video produced from Officer Schulien's car begins well after Carl was extracted from the vehicle and sitting on the ground surrounded by police officers. The purported reason that particular portion of video was marked to be saved is because another officer turned the lights on in Officer Schulien's car, so it would be easier for the medics to find them.

  The Plaintiffs question whether Officer Schulien actually turned off his car or whether the car was actually on the entire time. Evidence would suggest Officer Schulien is not telling the truth. The video evidence (that we do have) on Officer Schulien's car details the 45 second period prior to another officer coming over and allegedly activating the camera by turning on the red and blue emergency lights. If the car were truly off, it stands to reason that the camera would not have been on and there would be no 45 seconds of recording before the camera was turned on. Instead – the camera which is always on when the car is on – shows the officer walking up to the car to turn on the lights and also shows that Officer Schulien's car had its running lights on and windshield wipers on before the other officer walked over to turn on the lights. But, regardless of whether the car was on or off, for a portion of time, Officer Schulien undoubtedly had his car on when he was driving to the scene and when he was parking his car. Yet – no video of that time was produced. That video would undoubtedly corroborate Carl's side of the story that he put his wheelchair away in the back of his car and teetered alongside the car peaceable and not the officers' story that Carl was moving at a fast or hurried pace. Officer Schulien like Officer Woods could have saved that video, but he did not. Plaintiffs believe Defendants deliberately avoided saving the initial

videos of the encounter with Carl Culp for fear of having others see what the videos contained, which was unprompted and unwarranted violent attack against a vulnerable person.

Issue No. 3 – Defendants have listed numerous affirmative defenses, but Plaintiffs do not know, at this time, which of the numerous defenses Defendants actually intend to raise. Plaintiff would like to reserve the right to suggest to the Court the proper jury instructions regarding burden shifting and the elements of any affirmative defenses Defendants suggest will be tried.

## VI.    Anticipated testimony of each witness.

Witnesses Plaintiff expects to call:

1.  **Carl Culp**. Carl is a plaintiff and he will testify to: (1) the events of August 20, 2018; (2) the actions of law enforcements officers he encountered; (3) his relevant past history of post traumatic stress disorder; (4) how the officers' actions of August 20, 2018, have impacted his life; (5) the damages and harm he experienced as a result of the actions of officers on August 20, 2018; and (6) any other relevant testimony, as needed, to prove his claim.

2.  **Roberta Culp**. Roberta is a plaintiff and she will testify to: (1) the events of August 20, 2018; (2) the actions of law enforcements officers she encountered; (3) her interactions with Carl Culp and his emotions; (4) how the officers' actions of August 20, 2018, have impacted her life and Carl's life; (5) the damages and harm she and Carl experienced as a result of the actions of officers on August 20, 2018; and (6) any other relevant testimony, as needed, to prove the claims.

3.  **Dr. Daniel Nusbaum**. Dr. Nusbaum is board certified in neurology and psychiatry. Dr. Nusbaum will testify about: (1) his interviews with Carl Culp; (2) his credentials, history expertise as a medical doctor; (3) his expert reports and supplements thereto; (4) his deposition testimony; (5) his assessment of the harm Carl Culp has experienced; and (6) any other relevant testimony, as needed, to prove the claims.

4.  **Dr. Robert Barkhaus**. Dr. Barkhaus is a vocational expert. Dr. Barkhaus will testify about: (1) his interview with Carl Culp; (2) his credentials, history expertise as a vocational expert; (3) his expert reports and supplements thereto; (4) his assessment of Carl Culp's loss of income; and (6) any other relevant testimony, as needed, to prove the claims.

5. **Whitney Woods**. Officer Woods is a defendant and is expected to testify about his use of force against Carl Culp and any observations or interactions with others regarding the event of August 20, 2018, and the surrounding relevant circumstances.

6. **Stevan Schulien**. Officer Schulien is a defendant and is expected to testify about his use of force against Carl Culp and any observations or interactions with others regarding the event of August 20, 2018, and the surrounding relevant circumstances.

7. **Danette Courts**. Ms. Courts is a nurse. She worked at Mind-Body Medicine on August 20, 2018, and is expected to testify about her observations and interactions regarding the events of that day, along with any other relevant information about the surrounding circumstances.

8. **Bryan Jarboe**. Officer Jarboe is an officer with Allen County. He witnessed certain events at the scene and may have participated in getting Carl Culp out of the vehicle. He is expected to testify about his observations and interactions regarding the events of that day, along with any other relevant information about the surrounding circumstances.

9. **Denise Weaver**. Ms. Weaver is Carl's long-time boss at Lincoln Financial. She will testify about Carl's work history and performance at work, along with any other relevant information about the surrounding circumstances.

10. **Bradley Griffin**. Officer Griffin is expected to testify about his interactions and what he witnessed at the event of August 20, 2018, along with any other relevant information about the surrounding circumstances.

11. **Stephen Ealing**. Officer Ealing is expected to testify about his interactions and what he witnessed at the event of August 20, 2018, along with any other relevant information about the surrounding circumstances.

12. **Robert Wilcox**. Officer Wilcox is expected to testify about his interactions and what he witnessed at the event of August 20, 2018, along with any other relevant information about the surrounding circumstances.

Witnesses Plaintiff may call:

1. **Brock Hassenzahl**. Officer Hassenzahl is expected to testify about being dispatched to the event of August 20, 2018, along with any other relevant information about the surrounding circumstances.

2. **Rae Jackson**. Officer Jackson is expected to testify about being dispatched to the event of August 20, 2018, along with any other relevant information about the surrounding circumstances.

3. **Patrick Surine**. Officer Surine is expected to testify about being dispatched to the event of August 20, 2018, along with any other relevant information about the surrounding circumstances.

4. **Michael Bodecker**. Officer Bodecker is expected to testify about being dispatched to the event of August 20, 2018, along with any other relevant information about the surrounding circumstances.

5. **Steve Reed**. Chief Steve Reed is expected to testify about his discovery responses, along with any other relevant information about the surrounding circumstances.

6. **David Gladieux**. Sheriff Gladieux is expected to testify about his discovery responses, along with any other relevant information about the surrounding circumstances.

7. **Shawn Lawhorn**. Officer Lawhorn is expected to testify about his interactions and what he witnessed at the event of August 20, 2018, along with any other relevant information about the surrounding circumstances.

8. **Evan Gregory**. Officer Gregory is expected to testify about his interactions and what he witnessed at the event of August 20, 2018, along with any other relevant information about the surrounding circumstances.

9. **Sarah Glassley**. Nurse Glassley is expected to testify about her medical treatment of Carl Culp and the event of August 20, 2018.

10. **Jay Fawver**. Dr. Fawver is expected to testify about his medical treatment of Carl Culp and the event of August 20, 2018.

11. **Vanessa Biggs**. Ms. Biggs is expected to testify about her interactions working with Carl Culp at Lincoln Financial.

12. **Rick Harmon**. Mr. Harmon is expected to testify about his medical treatment of Mr. Culp after the event of August 20, 2018.

13. Any person listed in Plaintiffs' initial disclosure, any person listed in Defendants' initial disclosure, any person listed on Plaintiffs' or Defendants' witness list, and any person needed for impeachment or rebuttal.

Dated: December 13, 2022          Respectfully submitted,

**Wyland, Humphrey, Clevenger & Surrisi, LLP**

By: /s/ Janette E. Surrisi
    Janette E. Surrisi, 34788-50
    *Attorney for Carl and Roberta Culp*
    319 West Jefferson Street
    P.O. Box 158
    Plymouth, IN 46563
    Tel: (574) 936-2169
    Fax: (574) 936-2642
    Email: janette@whwclaw.com