UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CARL CULP, ROBERTA CULP, | |
| Plaintiffs, | |
| v. | Case No. 1:19-CV-106 JD |
| WHITNEY WOODS, STEVAN SCHULIEN, | |
| Defendants. | |

## OPINION AND ORDER

The parties have filed a number of motions in limine. (DE 131; DE 135.) Furthermore, relying on the arguments raised in the motions in limine, the parties have raised objections to certain exhibits. (DE 140; DE 151.) The Defendants have also filed a motion to exclude the opinions of Plaintiffs' two experts: Dr. Edward Nusbaum and Dr. Robert Barkhaus. (DE 133.) Finally, in their trial brief, Plaintiffs request a spoliation instruction, which Defendants have objected to. (DE 122; DE 144; 145.) The parties will be barred from disclosing any of the following issues or making any of the following arguments to the jury during trial. If either party wishes to raise any of those matters, they must first seek the Court's permission outside the presence of the jury.

### A.    Plaintiffs' Motions in Limine

*(1)  Motion to bar unredacted social security numbers or bank account numbers.*

Plaintiffs move to require Defendants to redact certain sensitive information included in exhibits Y through EE & GG through HH, such as social security numbers and birth dates. (DE 136 at 1; DE 151 at 1.) Defendants do not object to this motion in limine. (DE 143 at 1.)

Accordingly, the motion in limine is GRANTED. Defendants should ensure that exhibits are properly redacted.

> (2)  Motion to bar any statement or reference that the officers or anyone else saved Carl Culp's life.

Plaintiffs move to bar testimony from the Defendants concerning their perception that they saved Mr. Culp's life on August 20, 2018. (DE 136 at 2.) Defendants maintain that this is proper testimony based on "their opinion [of] what they personally observed and personally heard that day." (DE 143 at 1.) Under Rule 701 of the Federal Rules of Evidence, a lay witness may provide "testimony in the form of an opinion" if the opinion is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. In *U.S. v. Bogan*, 267 F.3d 614, 619 (7th Cir. 2011), for example, the Seventh Circuit faced the question of whether the district court erred in admitting a witness's statement that "he believed [two inmates] were 'trying to kill' Officer Degenhardt." The Seventh Circuit held that such a statement was admissible since it was rationally based on his observation of the incident and was helpful to the jury. Even though the witness was testifying about the mental state of the two inmates, the Seventh Circuit found that this was proper "lay opinion testimony as to the mental state of another" and that it was "competent under [Rule 701]." *Id.*

However, the situation here differs from *Bogan* because Defendants Schulien and Woods' opinions concerning whether Mr. Culp was suicidal do not appear to be rationally based on their own perception. As the Seventh Circuit has explained, "Rule 701(a)'s requirement that the opinion be rationally based on the witness's perception is 'the familiar requirement of *first-hand* knowledge or observation.'" *United States v. Wantuch*, 525 F.3d 505, 513 (7th Cir. 2008)

2

(emphasis added) (quoting Rule 701(a) Advisory Committee Note). Here, the Defendant

officers' opinions regarding whether they prevented Mr. Culp from attempting suicide or

whether they "saved his life" are primarily based on second-hand information from Nurse

Glassley. Therefore, because the officers' perception of whether Mr. Culp was suicidal appears

to come from second-hand information, the Defendants may not provide their opinion that they

saved Mr. Culp's life, that they prevented him from attempting suicide, or that he was suicidal.

The Court also notes that such beliefs would be unhelpful to the jury, since the jury is

required to find whether Defendants' use of force was unreasonable from the perspective of a

*reasonable* officer facing the same circumstances that the Defendants faced. Defendants'

*subjective* beliefs about whether they thought the use of force prevented Mr. Culp from

attempting suicide are not relevant. *See Phillips v. Cmty. Ins. Corp*., 678 F.3d 513, 519–20 (7th

Cir. 2012) ("An officer's use of force is unreasonable if, judging from the totality of the

circumstances at the time of the arrest, the officer uses greater force than was reasonably

necessary to effectuate the arrest. . . . Th[e] constitutional inquiry is objective and does not take

into account the motives or intent of the individual officers."); *see United States v. Allen*, 10 F.3d

405, 415 (7th Cir. 1993) ("Ultimately, the question of whether lay opinion falls into the category

of 'meaningless assertion' or whether that opinion will help the jury decide an issue in the case is

a judgment call for the district court."). However, Defendants Schulien and Woods may testify

about what they were told prior to coming to the scene regarding Mr. Culp's condition. They

may also testify about observations while at the scene and why they acted the way they did.

Furthermore, testimony from other lay witnesses, such as Nurse Glassley, that they

believe the officers saved the life of Mr. Culp or prevented him from attempting suicide is

irrelevant. Again, the Fourth Amendment claim in this case concerns whether the Defendants'

use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that the Defendants faced. *See Phillips*, 678 F.3d at 519–20. It is irrelevant whether other witnesses, with different backgrounds, who may have had far more familiarity with Ms. Culp's mental state (such as Ms. Glassley) thought that the officers saved his life that day or prevented him from attempting suicide.

Accordingly, Plaintiffs' motion in limine is GRANTED. The parties should only elicit testimony in accordance with the above.

> *(3) Motion to bar Dr. Jay Fawver, Sarah Glassley, or any other medical provider from testifying in any capacity other than as a fact witness and to prohibit them from serving as a rebuttal witness to Dr. Nusbaum's testimony.*

Plaintiffs next move to bar any medical provider from providing opinions about the treatment or diagnosis of Mr. Culp or to rebut the opinions of Dr. Nusbaum. (DE 136 at 2.) "Treating physicians, if designated as fact witnesses, may testify as to personal observations, examinations, and diagnoses completed during the course of treatment and contained within the relevant medical records." *Johnson v. Norfolk S. Ry. Co*., No. 12 C 102, 2015 WL 3738545, at *3 (N.D. Ind. June 15, 2015). At the final pretrial conference, defense counsel indicated that she was planning to elicit testimony from medical providers regarding the treatment history of Mr. Culp, what he reported to his medical providers, his demeanor during those meetings, and other observations. The Plaintiffs admitted that, if the testimony is limited as such, it would be proper factual testimony.

Accordingly, the Court GRANTS the motion in limine with the understanding that the medical providers will be allowed to testify as to their personal observations, examinations, and diagnoses of Mr. Culp, relevant only for the purposes of damages. However, they are not allowed to provide expert opinions.

*(4) Motion to bar Carl Culp's use of marijuana or related substances.*

Plaintiffs seek to bar Defendants from introducing evidence referencing Carl Culp's use of marijuana or marijuana related substances such as THC. (DE 136 at 3.) Defendants, on the other hand, argue that Mr. Culp's use of marijuana is relevant to the issue of emotional damages, because it would be necessary for the jury to determine whether his emotional injuries may be attributable to his extensive use of marijuana. (DE 143 at 7.)

The Court finds that evidence of Mr. Culp's marijuana use may be used to attack Mr. Culp's credibility. If Mr. Culp used marijuana on the day of the incident and was impaired, it could be relevant to credibility of his testimony. *Casares v. Bernal*, 790 F. Supp. 2d 769, 785–86 (N.D. Ill. 2011) ("Where there is reason to believe that alcohol or [narcotics] has seriously impaired a witness's memory of the events to which he is testifying or prevented him from understanding the events at the time they occurred, evidence of his drug or alcohol use is admissible." (citing *United States v. Spano*, 421 F.3d 599, 606 (7th Cir. 2005)). However, the question of what effect Mr. Culp's drug use had on his emotional state cannot be answered without introducing expert testimony regarding marijuana's effects. *See Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010) (explaining that "when there is no obvious origin to an injury and it has multiple potential etiologies, expert testimony is necessary to establish causation"); *Moody v. Maine Cent. R.R. Co.*, 823 F.2d 693, 695 (1st Cir. 1987) (expert testimony needed for emotional trauma). Because Defendants are not intending to present any expert witnesses, Defendants may not admit evidence of Mr. Culp's marijuana use for the purpose of showing that such use caused Mr. Culp emotional damages.

Accordingly, the Court GRANTS in part and DENIES in part Plaintiffs' motion in

limine. While Mr. Culp's prior usage of marijuana is relevant towards his credibility, it may not

be used to defend against emotional damages because Defendants have no expert to opine on

marijuana's effects.

> *(5) Motion to bar testimony that the officers did not use excessive force or that their actions were reasonable, not excessive, proper, justified, or warranted as those types of statements are improper legal conclusions.*

Plaintiffs seek to bar witnesses from testifying that the officers' actions were reasonable,

not excessive, proper, justified, or warranted because such testimony would constitute a legal

conclusion. (DE 136 at 4.) "[L]ay testimony offering a legal conclusion is inadmissible because

it is not helpful to the jury, as required by Rule 701(b)." *United States v. Noel*, 581 F.3d 490, 496

(7th Cir. 2009). "This is because a lay witness's purpose is to inform the jury what is in the

evidence, not to tell it what inferences to draw from that evidence." *Id.* While "a witness may

testify about the facts surrounding a police officer's use of force . . . it is for the factfinder to

determine whether the defendant officer used unreasonable force." *Holt v. Lewsader*, No. 18-

CV-2169, 2021 WL 4094996, at *9 (C.D. Ill. Apr. 19, 2021); *see also Larsen v. Barrientes*, No.

1:09-CV-55, 2010 WL 2772325, at *3 (N.D. Ind. July 12, 2010) ("Consequently, witnesses to

the arrest may testify about what they observed, but cannot attach legal labels such as 'excessive'

or 'unreasonable' to the Officers' actions.").

Accordingly, to the extent that Plaintiffs seek to bar witnesses from offering an opinion

as to whether the amount of force used was reasonable, excessive, warranted, justified, or any

other legal conclusion, the motion is GRANTED. However, to the extent Plaintiffs seek to bar

Defendant officers from testifying as to the type of force used, the amount of force used, or why

they used such force, the motion is DENIED.

Additionally, at the Final Pretrial Conference, the Plaintiffs sought to bar Captain Juan Barrientes from testifying as to the Department's use of force policy and the "use of force continuum." After the Final Pretrial Conference, Plaintiffs additionally submitted a motion seeking to bar Captain Barrientes from testifying as to the City of Fort Wayne's use of force policies and, specifically, about "the use of force continuum." (DE 169 at 2.) Defendants have filed a response to the motion to bar Captain Barrientes's testimony in which they assert that Captain Barrientes should be allowed to testify as a lay witness as to "what Fort Wayne Police officers are trained to do in general regarding the use of force at the Fort Wayne Police Training Center and the use of force continuum." (DE 170 at 2.)

The Court finds that testimony concerning the City of Fort Wayne's use of force policy, local training on the use of force,  and "the use of force continuum" is inadmissible. The Seventh Circuit has recognized that "[a]n officer's compliance with or deviation from *departmental* policy doesn't determine whether he used excessive force" and that "a police officer's compliance with the rules of *his department* is neither sufficient nor necessary to satisfy the Fourth Amendment's reasonableness inquiry." *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) (emphasis added). Lay witness testimony regarding a *local* police department's use of force training or policy is not helpful for determining how a "reasonable" officer might act, because that locality might have abnormal, unreasonable policies that deviate from the national norm. *Id.* at 538 ("Evidence of purely localized police procedure is less likely to be helpful than nationally or widely used policy. The jury's task is to determine how a reasonable officer would act in the circumstances, not how an officer in a particular local police department would act."). In *Brown*, the Seventh Circuit did indicate said that "*expert*" testimony about a "standard practice across the country to train officers to handle a given situation" may be admissible,

especially when unfamiliar "techniques or equipment" are used. *Id.* However, Captain Barrientes (1) is not testifying as an expert, (2) is not qualified to testify on standard practice across the country, and (3) this case does not appear to involve any special techniques or equipment. Accordingly, Captain Barrientes's proposed testimony about local practice is irrelevant and inadmissible.

Furthermore, our sister courts have routinely barred testimony regarding whether an officer's conduct was consistent with a local police department's guidelines, reasoning that it is irrelevant to whether the officer's use of force violates the Constitution. *Garrit v. City of Chicago*, No. 16-CV-7319, 2022 WL 124554, at *6 (N.D. Ill. Jan. 13, 2022) (holding that a witness could "not testify as to whether the officers' conduct was consistent with the Chicago Police Department's use of force policies"); *Hinch v. O'Connor*, No. 15 C 9316, 2018 WL 925119, at *6 (N.D. Ill. Feb. 15, 2018) ("[A]s the Seventh Circuit has made clear, whether or not an officer complies with police department general orders is irrelevant on the question of whether the officer's use of force violates the Constitution.").

Accordingly, any testimony regarding local use of force policies, whether the Defendants' actions were consistent with these policies, whether there is a policy regarding a "use of force continuum," local training on the use of force, or whether a "use of force continuum" exists, is inadmissible. If Captain Barrientes has no other testimony relevant to this case, he should not be presented as a witness.

*(6) Motion to bar references to officers having commendations, awards, or wearing medals.*

Plaintiffs move to bar references to law enforcement officers having medals, commendations, or awards. (DE 136 at 4.) The Defendants do not object to this motion in limine. (DE 143 at 8.) Accordingly, the motion in limine is GRANTED.

*(7) Motion to bar unreliable hearsay statements in the record.*

Plaintiffs seek to bar certain statements in the medical record. (DE 136 at 5.) These statements were made when Nurse Practitioner Sara Glassley typed in certain phrases in a computer program. For example, when the Nurse typed in "wishing to be someone else," the chart popped up with "*20% of suicidal patients.*" (DE 151-1 at 3.) Plaintiffs seek to bar these pop ups as inadmissible hearsay. Specifically, Plaintiffs seek to bar the pop ups in the exhibits Y through EE & GG through HH. The Court agrees that these statements would constitute hearsay if admitted for their truth.

Defense counsel, at the Final Pretrial Conference, argued that these statements were admissible to show the effect of the statement on Nurse Glassley. While this would make the statement non-hearsay, it is not apparent why the effect of this statement on Nurse Glassley is relevant. Again, this action concerns whether the Defendants use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that the Defendants faced . *See Phillips v. Cmty. Ins. Corp.,* 678 F.3d 513, 519–20 (7th Cir. 2012). Without showing that this information somehow made its way to the officers, it is irrelevant and inadmissible.

Accordingly, the Court GRANTS the motion in limine.

*(8) Motion to bar reference to Carl Culp's medical bills.*

The Plaintiffs seek to bar the introduction of any medical bills. (DE 136 at 7.) Plaintiffs claim that these medical bills are no longer relevant given that they have withdrawn all claims seeking to recoup their medical bills. Defendants do not object to this motion in limine. (DE 143 at 9.) Accordingly, it is GRANTED.

*(9) Motion to bar references to Officer Schulien's son with autism.*

Plaintiffs seek to bar Officer Schulien from testifying that he has an autistic son because

it is irrelevant and inadmissible under Federal Rule of Evidence 403. (DE 136 at 7.) The Court

agrees. Defendants argue in their response that this is relevant to Defendant Schulien's alleged

statement "we don't want to beat the ass of a handicap man." (DE 143 at 9.) However, that Mr.

Schulien has a son with autism does not appear to make it any more or less likely that he said

such a statement. Additionally, the testimony appears calculated to invoke sympathy with the

jury and will likely waste time and confuse the jury. Therefore, such testimony appears

impermissible under both Federal Rule of Evidence 401 and 403.

Accordingly, the motion in limine is GRANTED.

*(10) Motion to bar appeals to the jury as taxpayers.*

Plaintiffs seek to bar arguments that appeal to the jurors' pecuniary interests as taxpayers.

(DE 136 at 8.) Defendants do not object to this motion. (DE 143 at 10.) Accordingly, it is

GRANTED.

*(11) Motion to exclude non-party lay witnesses from the courtroom.*

Plaintiffs have filed a motion to exclude non-party lay witnesses from the courtroom. (DE

136 at 8.) Defendants do not object except to ask that all witnesses be excluded other than the

Plaintiffs and the Defendants. (DE 143 at 10.) Under Federal Rule of Evidence 615, "[a]t a

party's request, the court *must* order witnesses excluded so that they cannot hear other witnesses'

testimony . . . but this rule does not authorize excluding: (a) a party who is a natural person; (b)

an officer or employee of a party that is not a natural person, after being designated as the party's

representative by its attorney; (c) a person whose presence or party shows to be essential to

presenting the party's claim or defense; or (d) a person authorized by statute to be present." Here,

the Plaintiffs assert, in a conclusory manner, that their "expert's presence will be essential

10

especially if the Defendants get to introduce non-disclosed medical expert testimony upon whim." (DE 160 at 7.)

The Court will GRANT the motion in limine to exclude non-party lay witnesses from the courtroom. However, the Court will also exclude the Plaintiffs' experts from remaining in the Courtroom. Even if certain "information [is presented] which was not included in [prior pre-trial disclosures]," the experts would have "ample opportunity on direct examination for [the expert] to rebut, add to, or opine on the implications of such information by asking him to assume its existence." *United States v. Olofson*, 563 F.3d 652, 661 (7th Cir. 2009). For that reason, the Seventh Circuit in *Olofson* held that it was proper to prohibit the expert from being present in the courtroom during other witnesses' testimony. *Id.* Like in *Olofson*, the Plaintiffs have not sufficiently explained why their experts' presence would be *essential* to this case, given that any hypothetically new medical information could be addressed during examination of the experts by asking them to assume its existence.

### *(12) Motion to prohibit the use of police databases to research jurors.*

Plaintiffs have filed a motion to prohibit the use of police databases to research jurors. (DE 136 at 8.) Defendants do not object to this motion in limine. (DE 143 at 10.) Accordingly, the motion in limine is GRANTED.

### *(13) Motion to bar reference to police officers having dangerous jobs, tough jobs, or jobs that risk their lives.*

Plaintiffs argue that references to police officers having some risk in their job is irrelevant and would be character evidence in violation of Federal Rule of Evidence 404(b). (DE 136 at 9.) "Any general arguments or mentions of police officers risking their lives or their heroism are irrelevant and overly prejudicial to merit admission." *Jones v. City of Chicago*, 2017 WL

11

413613, at *8 (N.D. Ill. Jan. 31, 2017). However, whether the officers perceived the situation on August 20, 2018, to present a risk, and why they perceived the situation to present a risk, is relevant to the Plaintiffs' claim.

Accordingly, the motion in limine is GRANTED with the understanding that the Defendant Officers may testify as to whether the August 20, 2018, incident presented a risk and why they perceived that the situation may have been dangerous.

*(14) Motion to bar references to controversial topics such as blue lives matter, the thin blue line, or defund the police rhetoric.*

Plaintiffs have moved to bar reference to certain controversial topics, such as blue lives matter or defund the police. (DE 136 at 9.) The Defendants do not object to granting this motion in limine. (DE 143 at 10.) Accordingly, the motion in limine is GRANTED.

**B.      Defendants' Motions in Limine**

*(1) Motion to bar references to discipline against Officer Whitney Woods, Officer Stevan Schulien, or any other police officer who testifies.*

Defendants have moved to bar references to unrelated wrongs, such as civil lawsuits, citizen complaints, and/or discipline taken against the officer defendants or other officers who may testify at trial. (DE 132 at 1.) Plaintiffs do not oppose that motion except if the door is opened for impeachment purposes. (DE 147 at 1.)

Accordingly, the Court GRANTS this motion in limine with the understanding that, if the door is opened, Plaintiffs may introduce said evidence for impeachment purposes.

*(2) Motion to bar references to settlement negotiations.*

Defendants move to bar references to settlement negotiations between the parties. (DE

132 at 6.) The Plaintiffs do not object to granting this motion. (DE 147 at 1.) Accordingly, it is GRANTED.

     *(3) Motion to bar references to whether the City of Fort Wayne will be paying for any judgment against Officer Whitney Woods and Officer Stevan Schulien.*

Defendants move to bar references to whether the City of Fort Wayne will be paying for any judgment against the Defendants. (DE 132 at 6.) They assert that any reference to indemnification is inadmissible under Federal Rule of Evidence 403. The Court agrees. "In the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government—not the individual defendants—is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998). Allowing in indemnification information encourages the jury that there is a "deep pocket" to satisfy the judgment, which "has no bearing" on Defendants' liability. *Ledford v. Lamartz*, 462 F. Supp. 3d 905, 910 (N.D. Ind. 2020).

Plaintiffs argue that indemnification is relevant to the issue of punitive damages, but even in cases where plaintiffs seek punitive damages courts generally don't allow plaintiffs to provide evidence of indemnification. *Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *7 (N.D. Ill. June 12, 2015) (rejecting the argument indemnification should be admissible merely because a "party's financial condition is relevant for purposes of assessing punitive damages"). The only circumstance where evidence of indemnification is allowed is where the defendants "open the door" by making their "financial weakness the centerpiece of their testimony" *Lawson*, 153 F.3d at 379; *see also Betts v. City of Chicago, Ill.*, 784 F. Supp. 2d 1020, 1030 (N.D. Ill. 2011) ("Despite the general rule that evidence of payments received from collateral sources is inadmissible, where a defendant testifies to his/her financial hardship, thereby leaving the jury with the impression that the defendant will be personally responsible for paying damages, when

13

in reality the defendant will be indemnified, the defendant has opened the door to the plaintiff's presentation of evidence showing that the defendant will be indemnified.").

Accordingly, the motion is GRANTED with the understanding that if Defendants open the door to indemnification evidence by testifying about how they would financially struggle to pay a judgment, evidence of indemnification may be introduced.

(4) *Motion to bar testimony that Officer Whitney Woods and Officer Stevan Schulien used "excessive force."*

Defendants move to bar testimony from Plaintiffs or any of their witnesses that Defendants used "excessive force" (DE 132 at 6.) For the same reasons as discussed when considering Plaintiffs' motion in limine #5, the Court will GRANT this motion in limine to the extent that Defendants seek to bar witnesses from offering an opinion as to whether the amount of force used was reasonable, excessive, warranted, justified, or any other similar legal conclusion. However, to the extent Defendants seek to bar testimony from the Culps as to the type of force used or the amount of force used, the motion is DENIED.

(5) *Motion to bar Plaintiffs Carl Culp and Roberta Culp's deposition testimony.*

Defendants' motion seeks to bar Plaintiffs from discussing various subjects which were brought up during their deposition testimony. (DE 132 at 7.) The Court will consider each of these subjects separately.

(a) *Motion to bar discussion of the statement from Carl Culp's psychiatrist that he had no business being at Parkview Behavioral Health.*

During Carl Culp's deposition, he testified about being hospitalized at Parkview Behavioral Health. According to his testimony, he saw a psychiatrist who "told [him] that [he had] no business being there." (DE 132 at 8.) Defendants argue that this conversation is inadmissible hearsay and irrelevant.

The Court agrees with the Defendants. First, the Court finds that this conversation is irrelevant. There is no evidence that this conversation was brought to the attention of the Defendant Officers prior to coming to the scene on August 20, 2018. Accordingly, whether a doctor told Mr. Culp at some prior point that he "had no business being" at Parkview Behavioral Health does not tend to show that the actions of the officers on August 20, 2018, were unreasonable. Second, the statement appears to be inadmissible hearsay. The statement took place out of court and would be introduced for its truth – to show that Mr. Culp was not the type of person to belong at a psychiatric hospital. Defendants argue that the statement would be admitted under the exception for statements made for medical diagnosis or treatment. Fed. R. Evid. 803(4). However, "Rule 803(4) does not purport to except, nor can it reasonably be interpreted as excepting, statements by the person providing the medical attention to the patient." *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 564 (7th Cir. 1996); *see also Green v. Schroeder*, No. 12-CV-761-WMC, 2016 WL 4625495, at *3 (W.D. Wis. Sept. 5, 2016) (explaining that "notes in the medical records that reflect the psychiatrists' *own* medical opinions or impressions are not excepted from the rule against hearsay under Rule 803(4)").

Accordingly, because the statement is irrelevant and hearsay, the motion in limine is GRANTED as to the statement from Mr. Culp's psychiatrist at Parkview Behavioral Health.

*(b)  Motion to bar statements that Mr. Culp's brother felt the beating was "wrong."*

During Mr. Culp's deposition he testified that his brother was a Marshall County Police Officer and that his brother felt that what "happened was wrong" because he "had never seen someone in [his] condition . . . beaten the way that [Mr. Culp] was beaten." (DE 132 at 8–9.) The Defendants object to any testimony by Mr. Culp that his brother believes that the police actions were wrong. (*Id.*)

As explained above when addressing Plaintiffs' motion in limine #5 and Defendants' motion in limine #4, testimony concerning whether a witness thought the use of force was excessive, unjustified, or wrong, is inadmissible. Additionally, this constitutes inadmissible hearsay evidence since it is an out of court statement that is meant to prove the truth of the matter asserted.

Accordingly,  the Court GRANTS the motion in limine.

*(c)Motion to bar Roberta Culp from testifying that Carl Culp told her that mental health professionals had told him he didn't need medical treatment.*

During her deposition, Roberta Culp testified that Mr. Culp told her that mental health professionals had told him that he did not need to be hospitalized. Defendants move to bar this testimony. Plaintiffs do not oppose this motion. (DE 147 at 4.) Accordingly, it is GRANTED.

*(d) Motion to bar Roberta Culp's testimony that the pepper spray burned and hurt her eyes.*

During her deposition testimony, Ms. Culp testified that she got pepper sprayed in her eyes during the August 20, 2018, incident, that this pepper spray burned, and that it hurt. (DE 132 at 10.) Defendants argue that testimony concerning Ms. Culp getting pepper sprayed is irrelevant and inadmissible. (*Id.*) The Court disagrees. Ms. Culp getting pepper sprayed in her eyes is relevant to multiple material issues, including (1) whether unreasonable force was used against Mr. Culp, as this tends to show that he too was pepper sprayed, (2) whether the Defendants are liable for assault or battery against Ms. Culp, and (3) the damages Ms. Culp would be entitled to if the Defendants are found liable.

Accordingly, the Court DENIES the motion in limine as it pertains to Ms. Culp getting pepper sprayed.

(6) *Motion to bar the financial records of Carl Culp from Lincoln Financial Group, as well as his taxes and paystubs (Plaintiffs' Exhibits 15 And 16).*

Defendants move to bar evidence of Mr. Culps' financial records, taxes, and paystubs (which are contained in Plaintiffs' exhibits 15 and 16), arguing that they are not relevant because "there is no evidence . . . that Mr. Culp lost his job in February of 2019 at Lincoln Financial Group because of the incident with the police on August 20, 2018." (DE 132 at 11; DE 140 at 1.) However, Plaintiffs indicated at the Final Pretrial Conference that they expect Dr. Nusbaum to testify that the August 20, 2018, incident caused prior symptoms of PTSD to worsen. Plaintiffs also indicated at the Final Pretrial Conference that they expect a long-term supervisor to testify that Mr. Culp's behavior at work worsened after the incident. Plaintiffs' response brief to Defendants' motion in limine also cites specific examples from deposition testimony which are consistent with their view that there is evidence from which a jury could conclude Mr. Culp lost his job due to his encounter with the police. (DE 147 at 5–9.) Given that whether Mr. Culp lost his job because of the incident on August 20, 2018, is a factual dispute appropriate for the jury's consideration, the above financial records are relevant to the issue of damages for lost income.

Accordingly, the motion in limine is DENIED.

(7) *Motion to bar the "captioned" in-car camera video of Officer Whitney Woods (Plaintiffs' Exhibit 34).*

Plaintiffs seek to admit a captioned video of the encounter with the police on August 20, 2018. Defendants argue that, in these captions, Plaintiffs' attorneys added certain descriptions such as "taser deployment noise," "coughing from pepper spray," and "inaudible conversation." Defendants also assert that Plaintiffs' attorneys added many captions indicating what they believe the officers, Mr. Culp, and others are saying (DE 132 at 15–18.) Defendants seek the exclusion of these captions, which are contained in Plaintiffs' Exhibit 34. (DE 140 at 5.)

A "court has broad discretion to admit a transcript of an audio recording as an aid to the jury." *United States v. Wilson*, 481 F.3d 475, 482 (7th Cir. 2007). "[T]ranscripts should not ordinarily be given independent weight" and the "jury should be instructed that it is the tape recording itself which is the primary evidence, that the transcript is to assist the jury in evaluating the primary evidence, and that if the jury determines that the transcript is in any respect incorrect, it should disregard it to that extent and rely on its own interpretation of the recording." *United States v. Nunez*, 532 F.3d 645, 651 (7th Cir. 2008).

As the Court discussed at the Final Pretrial Conference, the narrative captions concerning actions or inaudible sounds, such as "taser deployment noise" or "coughing from pepper spray," would not be helpful to the jury and should be eliminated. Instead of these narrative captions, counsel may ask its witnesses, such as Mr. Culp and Ms. Culp, to testify as to what certain sounds were or what was occurring in certain portions of the video. However, captions of the communications occurring during the video are permissible aids. The captions should encompass the entirety of the discernible communications in the video, so as to not improperly draw attention to select portions. To the extent that Defendants disagree with certain captions, they are entitled to proffer their own demonstrative exhibit with their own captions or transcript of the recording.

Accordingly, the motion in limine is GRANTED in part and denied in part. Plaintiffs should modify Exhibit 34 to comply with this Court's order.

*(8) Motion to prohibit golden rule arguments.*

Defendants move to bar arguments related to the golden rule. (DE 132 at 18.) A golden rule appeal is one in which "the jury is asked to put itself in the plaintiff's position" and "is universally recognized as improper because it encourages the jury to depart from neutrality and

to decide the case on the basis of personal interest and bias rather than on the evidence." *Spray-Rite Serv. Corp. v. Monsanto Co*., 684 F.2d 1226, 1246 (7th Cir. 1982).

Accordingly, the Court GRANTS the motion in limine and bars the Plaintiffs from making arguments which "ask the jury to put itself in the plaintiff's position."

*(9) Motion to prohibit all arguments to the jury that they should send a message that this lawsuit serves the public at large.*

Defendants ask that the Court forbid any argument, evidence, or testimony relating to sending a message or that this verdict would benefit the public at large. (DE 132 at 18.) However, in punitive damages cases, a "Plaintiff is permitted to argue that she is attempting to deter Defendant officers and other police officers from misconduct." *Smith v. Garcia*, No. 15-CV-10105, 2018 WL 461230, at *6 (N.D. Ill. Jan. 18, 2018); *see also Martinez v. City of Chicago*, No. 14-CV-369, 2016 WL 3538823, at *11 (N.D. Ill. June 29, 2016) ("[Plaintiff] may argue that punitive damages are appropriate to serve as an example to other officers that they should not do *what Defendants did in this case*[.]"). On the other hand, because this is not a case involving the City of Fort Wayne, the Plaintiffs may not argue that they are attempting to send a message to the City of Fort Wayne itself. *Smith v. Garcia*, No. 15-CV-10105, 2018 WL 461230, at *6 (N.D. Ill. Jan. 18, 2018) ("However, any argument that [plaintiff] would like to 'send a message' to the City itself implies that the City has a policy or practice of condoning such misconduct, which is not being addressed in this trial, since there is no *Monell* claim.").

Accordingly, the Court DENIES this motion in limine so long as the argument is for the limited purpose as explained above.

**C.     Defendants' Motion to Exclude Dr. Nusbaum and Dr. Barkhaus**

Defendants have also moved to exclude both of Plaintiffs' expert witnesses, Dr. Daniel Nusbaum and Dr. Robert Barkhaus, under Rule 702, which governs the admission of testimony by expert witnesses. (DE 133.) Under that rule, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may offer an opinion if the following criteria are met:

> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

A court has a gatekeeping role to ensure that expert testimony meets these criteria. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834–35 (7th Cir. 2015). The proponent of the expert testimony bears the burden of demonstrating that the testimony meets each of those elements. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019). However, a court does not assess "'the ultimate correctness of the expert's conclusions.'" *Textron*, 807 F.3d at 834 (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). Rather, a court must focus "solely on principles and methodology, not on the conclusions they generate." *Schultz*, 721 F.3d at 432 (quoting *Daubert*, 509 U.S. at 595). "So long as the principles and methodology reflect reliable scientific practice, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

Defendants argue that Dr. Nusbaum's opinions are not based on sufficient facts. (DE 134 at 1.) In Dr. Nusbaum's expert report, he opined that the August 20, 2018, incident caused enhanced symptoms of PTSD in Mr. Culp, who was previously diagnosed with PTSD prior to the incident. (DE 133-4 at 3–5.) In coming to this opinion, Dr. Nusbaum relied on his 65 years of medical training, an interview with Mr. Culp, a review of the complaint and jury demand, a review of three police reports dated August 24, 2018, photographs of Mr. Culp's injuries and his automobile, and two prior depositions of Mr. Culp. (*Id.* at 6.)[1]

Defendants assert that the above material is not sufficient and that Nusbaum failed to look at numerous pieces of evidence, including medical records from the Three Rivers Ambulance Authority, mental health records from Parkview Behavioral Health, mental health records from other facilities, and multiple depositions. (DE 134 at 4–10.) Because he failed to review these materials, Defendants argue that Dr. Nusbaum's deposition testimony is predicated "almost exclusively on Mr. Culp's version of the events" and that his opinion is "not based on a full and clear picture of the facts" (*Id.* at 5–6.)

The Court finds that the facts underlying Dr. Nusbaum's opinion are sufficient. "The soundness of the factual underpinnings of the expert's analysis" is a "factual matter[ ] to be determined by the trier of fact, or, where appropriate, on summary judgment." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Experts are allowed to rely solely on a client's version of the disputed facts. *See Scott v. Chuhak & Tecson, P.C.*, No., 2011 WL 4462915, at *5 (N.D. Ill. 2011) ("[A]n expert opinion cannot be based on facts that are contradicted by

---

[1] Plaintiffs indicated at the Final Pretrial Conference that Dr. Nusbaum's testimony was consistent with the Diagnostic and Statistical Manual of Mental Disorders (DSM). However, Dr. Nusbaum did not rely on the DSM when rendering his opinion. (DE 133-4 at 5.) At the Final Pretrial Conference, the Plaintiffs represented that they would not introduce the DSM into evidence. In line with this representation, the Court finds that the DSM is inadmissible.

undisputed evidence. He may, however, rely on his client's version of any disputed facts."); *see, e.g., In re Ready–Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 165 (S.D. Ind. 2009) (denying request to strike expert's opinion where expert assumes facts based on his review of evidence even though opponent submitted evidence contradicting his assumptions). As Defendants note, Dr. Nusbaum's opinion is based on an interview with Mr. Culp, police reports, photographs of Mr. Culp's injuries, and two prior depositions of Mr. Culp. Even though there may be evidence contradicting these factual underpinnings, the proper recourse is not exclusion, but rather cross-examination of Dr. Nusbaum and the opportunity to present evidence undercutting any factual assumptions. *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 811 (N.D. Ill. 2013) (explaining that disagreements with the expert's factual assumptions could be "highlight[ed] on cross-examination" and that there would be an opportunity "to present evidence proving [the expert's assumptions] to be incorrect").

Defendants did not develop arguments as to the other criteria under Rule 702, so the Court does not consider them here. Of course, at trial, the Plaintiffs will have to properly qualify their expert witnesses and have them explain their methodology before they provide their opinions. Defendants do briefly argue, in a conclusory manner, that Dr. Nusbaum's testimony should be barred under Rule 403. However, Dr. Nusbaum's testimony would be highly probative, given that it concerns the effect of the August 20, 2018, incident on Mr. Culp's mental health. Furthermore, any prejudice that stems from the ostensibly "one-sided" facts undergirding Dr. Nusbaum's opinion can be remedied through cross-examination and the opportunity to present evidence. Accordingly, because there are sufficient facts to support Dr. Nusbaum's opinion and because it appears relevant, the Court denies Defendants' motion to exclude Dr. Nusbaum.

Next, the Court considers the motion to exclude Dr. Barkhaus, who is being offered as a vocational expert and will testify primarily about Carl Culp's loss of income. (DE 122 at 18.) In rendering his opinion, Dr. Barkhaus looked at copies of tax returns, deposition transcripts, employment records from Lincoln Financial, the expert medical report from Dr. Nusbaum, police reports, interrogatory responses, supplemental interrogatory responses, and selected social security administration records. (DE 133-1 at 2.) He also researched and utilized information from two books: *The Dictionary of Occupational Titles* and *The Transitional Classification of Jobs*. (*Id.*)

Defendants raise the same objection they did as to Dr. Nusbaum and argue that Dr. Barkhaus also did not rely on sufficient facts. However, as discussed in detail above, "the soundness of the factual underpinnings of the expert's analysis" is a "factual matter[ ] to be determined by the trier of fact, or, where appropriate, on summary judgment." *Smith*, 215 F.3d at 718. The Defendants may expose flaws in these factual underpinnings by conducting a vigorous cross-examination of Dr. Barkhaus and by presenting evidence contradicting the assumed facts.

Next, Defendants argue that Dr. Barkhaus's opinion is irrelevant because "there is no evidence in this case that Mr. Culp lost his job on February 21, 2019, at Lincoln Financial Group because of the incident with the police six months earlier on August 20, 2018." (DE 134 at 12.) However, as discussed when ruling on Defendants' motion in limine # 6, there is evidence that Mr. Culp lost his job due to the incident with the police. Plaintiffs indicated at the Final Pretrial Conference that they expect Dr. Nusbaum to testify that the incident caused prior symptoms of PTSD to worsen. Plaintiffs also indicated at the Final Pretrial Conference that they expect a long-term supervisor to testify that Mr. Culp's behavior worsened after the incident. Plaintiffs' response brief to Defendants' motion in limine also cites specific examples from deposition

testimony which are consistent with their view that there is evidence from which a jury could conclude Mr. Culp lost his job due to his encounter with the police. (DE 147 at 5–9.) Accordingly, the Court finds that Dr. Barkhaus's testimony as to lost income would be relevant to the issue of lost wages.

Finally, the Court touches on the subject matter that Dr. Barkhaus may opine on. In his expert report, Dr. Barkhaus indicates that he is qualified to serve as a Vocational Expert Witness due to: (1) being a board-certified vocational expert for over 36 years, (2) serving as a vocational expert in the Social Security Administration since 1977, (3) testifying over 7,500 times before Administrative Law Judges, and (4) getting a Ph.D. at Purdue University Majoring in Counseling and Personnel Services, where he concentrated in the Career Counseling Field. (DE 133-1 at 2–3.)

While it appears the Dr. Barkhaus would be qualified to testify on Mr. Culp's lost earnings,[2] some of the conclusions in his report go beyond the subjects he is qualified to opine on. For example, in his report, he concludes that "as a result of the trauma that Mr. Culp experienced with the police . . . he no longer is able to engage in work activity" and "would not be able to engage in work activity because of his inability to stay focused and concentrate on work activities." (DE 133-1 at 8.) These opinions touch on the effect of the incident on Mr. Culps' mental state. There is no indication in the record that Dr. Barkhaus is qualified to testify on Mr. Culp's mental state or whether the August 20, 2018, incident caused his mental state to worsen. He is not a medical doctor, but rather a vocational expert. Accordingly, as discussed at the Final Pretrial Conference, any testimony from Dr. Barkhaus should be confined to his calculation of Mr. Culp's lost income. He may also testify that, in rendering his opinion, he

---

[2] At trial, Plaintiffs will have to properly qualify Dr. Barkhaus before he is allowed to provide his expert opinion.

*assumed* certain facts about Mr. Culp's physical and mental condition were true based on the materials he reviewed.

The Court also notes that Defendants objected to the reports of Dr. Nusbaum and Dr. Robert Barkhaus (contained in Plaintiffs' exhibits 10, 11, 12, 13, and 14), relying on the same arguments they raised in their motion to exclude. (DE 140 at 8.) These reports should not be admitted because they would be cumulative of any testimony presented by the experts and the majority of the reports likely constitute inadmissible hearsay. *See Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (noting that an expert report was "needlessly cumulative" to the extent it repeated expert's trial testimony and that "the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule").

**D.     Spoliation Instruction**

In Plaintiffs' trial brief, they requested a spoliation instruction. (DE 122 at 15.) According to Plaintiffs, both Defendants' squad cars were equipped with in-car cameras, which, when functioning properly, were recording whenever the cars were turned on. (*Id.*) In his deposition, Officer Woods testified that there were four ways a police car's recording would be marked to be saved: (1) when he activated his car's "lights"; (2) when he hit his "mic" button; (3) when he pressed the "record button on the in-car camera itself"; and (4) when he "record[ed] after the fact," which meant that he could, at some later point, go back and save the video. (DE 164-1 at 8:13–16:9.) Plaintiffs argue that the Defendants spoliated evidence concerning the encounter on August 20, 2018, because the recording of the beginning of the encounter was never produced.

The Court finds that a spoliation instruction is not warranted. "When a party intentionally destroys evidence in bad faith," a court "may instruct the jury to infer the evidence contained incriminatory content." *Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013). However, the

mere failure to record a conversation does not equate to intentional destruction of evidence in bad faith. For example, in *United States v. Rebolledo-Delgadillo*, a defendant claimed he was entitled to an instruction on spoliation of evidence where the government "failed to record a conversation between [him] and the CI . . .]." No. 13 CR 00673, 2015 WL 13037308, at *6 (N.D. Ill. Apr. 14, 2015). The court found that the mere failure to record the conversations did not demonstrate that the United States, "in bad faith, failed to preserve relevant evidence." *Id.* While the court found that a spoliation instruction was not warranted, the court stated that this did not prevent the defendant from arguing "that the government's selective recording adversely reflects on the credibility of the evidence it has presented." *Id.* The Seventh Circuit then affirmed the Northern District of Illinois' holding, writing that "there was no evidence whatsoever that the government destroyed parts of the recording or tampered with the recording device." *United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 878 (7th Cir. 2016).

Like in *Rebolledo-Delgadillo*, the Plaintiffs have not put forth evidence suggesting that the police failed to save the recording for the purpose of hiding adverse information. Rather, they have evidence that the Plaintiffs failed to affirmatively go back and save that video, which does not, on its own, indicate an intent to hide adverse information. *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010) ("The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed for the purpose of hiding adverse information."). Plaintiffs assert that intentionality can be shown because the City of Fort Wayne had a policy that the department record "all actual or potential suspect encounters" and that they provided "notice of [the] tort claim." (DE 164 at 2.) However, Plaintiffs fail to provide evidence concerning how long "after the fact" recordings are available to be marked to be saved. Without knowing how long officers are able to go back and "save" the

videos, or that they had that capability to go back and save this information when they were put on notice of the tort claim, it is impossible to mark this up to bad faith rather than inadvertence.

Plaintiffs also point to other "concerning" circumstances surrounding the "missing" video footage. (DE 164 at 4.) According to Plaintiffs, Officer Schulien responded to an interrogatory asking why the recording of the beginning of the encounter was not saved by responding with "shut car off" and that Defendants' "purported reason that [a video beginning after Carl was extracted from the vehicle and sitting on the ground was marked to be saved] is because another officer turned the lights on in Officer Schulien's car[.]" Plaintiffs assert that there is evidence indicating that the car was, in fact, on. According to Plaintiffs, a recording from the car shows the "45 second period prior to another officer coming over and allegedly activating the camera" by turning on the lights. (DE 164 at 5.) Plaintiffs claim that the car had to be on in those preceding 45 seconds in order for this recording to be produced, which suggests that the car was not turned off as Schulien claimed in his answer.

The Court will assume that the Plaintiffs are correct and the car was on, contrary to Officer Schulien's interrogatory. Because the car was on, this means that the car would have been recording.[3] However, it does not mean that the recording would have been automatically marked to be saved. According to Officer Woods' deposition, the car being on, by itself, did not mark videos to be saved. Therefore, one potential innocuous explanation for why the recording was saved 45 seconds prior to the lights being turned on is that turning on the lights marked the recording to be saved not only from the moment the lights were turned on, but also the 45

---

[3] The fact that Officer Schulien's car was on could be used to undermine his credibility. For example, if, in his deposition he stated he shut the car off, but the video recording indicates the car was on, then this casts doubt on Officer Schulien's recollection of the incident. However, the fact the car was on does not demonstrate that the car was *saving* those recordings nor that the Defendants intentionally destroyed those saved recordings in bad faith.

seconds prior to the lights turning on. In other words, the 45 seconds of footage produced still may have been the result of the automatic saving function attributable to turning on the lights. Plaintiffs have provided the Court with no deposition testimony indicating anything to the contrary.

A finding of bad faith from the failure to save footage would require the presentation of further evidence. Plaintiffs would need to present evidence clearly explaining the mechanics surrounding how videos are marked to be saved, evidence that they had the capability to mark the video to be saved when they were put on notice of the tort claim, *and* evidence indicating that Defendants themselves knew it was their responsibility to go back and save said encounter when a tort claim was filed (as opposed to another officer). Without that evidence, it is impossible to conclude there was bad faith on the part of the Defendants. The Court notes that it appears unlikely that Plaintiffs will be able to elicit this testimony from the officers given that Officer Woods, in his deposition testimony, explained that all he knew about video storage was that "[i]t gets downloaded through our server in our squad car, which then gets uploaded. But that's all I know, I'm not a[n] IT guy." (DE 164-1 at 9:16–20.)

Therefore, while the evidence that the Defendant officers did not save the video may adversely reflect on their credibility, like in *Rebolledo-Delgadillo*, a jury instruction is not justified at this time based on that evidence alone. If the evidence presented at trial addresses the deficiencies discussed above, then Plaintiffs' counsel may request at the Final Instruction Conference that such an instruction be given.

### E.      Conclusion

For the reasons stated previously, the motions in limine submitted by both parties are granted in part and denied in part. (DE 131; DE 135.) The Defendants motion to exclude Dr.

Edward Nusbaum and Dr. Robert Barkhaus's opinions, testimony, and reports is denied. (DE

133.) Furthermore, the Plaintiffs' request for a spoliation instruction is also denied.

      SO ORDERED.

      ENTERED: January 27, 2023

                    /s/ JON E. DEGUILIO
                    Chief Judge
                    United States District Court