UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

CARL CULP, et al.,

    Plaintiffs,

    v.                         Case No. 1:19-CV-106 JD

WHITNEY WOODS, et al.,

    Defendants.

**OPINION AND ORDER**

In March 2023, after a three-day trial, the jury returned a verdict in favor of Officers

Whitney Woods and Stevan Schulien (the "Defendants") and against Plaintiffs Carl and Roberta

Culp (the "Plaintiffs") on nine of ten claims.[1] The jury only found for the Plaintiffs on Roberta

Culp's state law battery claim against Officer Woods and awarded her $1.00 in nominal

damages. After the trial, the Plaintiffs filed motions seeking a new trial, as well as awards of

costs, fees, and sanctions. The Defendants have also filed a motion requesting costs be awarded.

For the reasons stated below, the Court DENIES the Plaintiffs' motions for a new trial, costs,

fees, and sanctions. The Court also DENIES the Defendants' request for an award of costs.

A.    **Factual Background**

On August 20, 2018, at around 4:46 in the afternoon, Officers Whitney Woods and

Stevan Schulien of the Fort Wayne Police Department responded to a call from PPG Mind-Body

Medicine ("Mind-Body") reporting that a man, Carl Culp, was suicidal. Dispatch advised that

---

[1] Carl Culp lost on his claims of excessive force, assault, and battery against Officers Schulien and Woods. (Verdict Form, DE 200.) Roberta Culp lost on her claims of assault against Officers Schulien and Woods, as well as her claim of battery against Officer Schulien.

Carl, a double amputee, had threatened to slit his wrists with a box cutter. Officer Schulien arrived at the scene first. Carl was outside his car, which had been driven to Mind-Body by his wife, Roberta Culp. Officer Schulien asked Carl if he would come speak with him inside the building, but Carl declined.

Officer Woods then arrived at the scene. At this point, Officer Schulien asked Roberta to turn the car off, which she did, but she remained sitting in the driver's seat. Carl then sat in the passenger seat.[2] Officers Schulien and Woods asked Carl to come out of the car a few times, but he refused. The officers then began pulling on Carl—by his clothes, his prosthetic, his knee, and his purse. But Carl, who was using the central pillar of the car to brace himself, did not get out. Realizing that pulling alone was not going to get Carl to leave, Officer Woods tased Carl and then pepper sprayed Carl. Some of this pepper spray got in Roberta's eyes. However, Carl still did not leave the vehicle.[3] Officer Schulien then began to "hammer fist" Carl's forearm as he held onto the steering wheel. After all of these efforts failed, the officers decided to hold onto Carl and wait for backup. When other officers arrived, they were finally able to pull Carl out of the car, handcuff him, and take him to Parkview Behavioral Health, where Carl stayed for three days.

On March 21, 2019, Carl and Roberta Culp filed suit, bringing the following claims against Defendants Woods and Schulien:

| | |
|---|---|
| **Count I:** | Excessive Force under 42 U.S.C. § 1983 |
| **Count II:** | Violation of Section 504 of the Rehabilitation Act and Section 202 of the Americans with Disabilities Act |
| **Count III:** | Intentional Infliction of Emotional Distress |
| **Count IV:** | Negligent Infliction of Emotional Distress |

---

[2] There is some conflicting testimony about how many times the Officers asked Carl to come inside and talk with them, or whether they asked him to stop moving towards the passenger door. However, it is clear that Carl ultimately sat down in the passenger seat and decided not to go back inside Mind-Body.

[3] Roberta left the vehicle after Carl was pepper sprayed, but before the officers began "hammer fisting" his arm.

| **Count V:** | Assault |
| **Count VI:** | Battery |
| **Count VII**: | Criminal Mischief |

(DE 1.)[4] The only claims that proceeded to trial were Carl Culp's claims for excessive force, assault, and battery, as well as Roberta Culp's claims for assault and battery.

After a three-day trial, the jury found that the defendants were not liable on Carl's claims for excessive force, assault, and battery. As to Roberta's claims, the jury found that both defendants were not liable for assault and that Officer Schulien was not liable for battery. However, the jury found Officer Woods liable for $1.00 in nominal damages on Roberta's battery claim. The Plaintiffs and the Defendants have filed several post-trial motions, which are now ripe for review.

**B.      Discussion**

The parties have filed several post-trial requests, which fall into four categories. First, the Plaintiffs move for a new trial under Federal Rule of Civil Procedure 59. Second, both the Plaintiffs and the Defendants request that they be awarded costs under Federal Rule of Civil Procedure 54(d)(1). Third, the Plaintiffs move for attorneys' fees under 42 U.S.C. § 1988. Lastly, the Plaintiffs move for sanctions against Officer Schulien under Federal Rule of Civil Procedure 26 and 37. The Court will consider each of these requests in turn.

**1.   *Motion for New Trial***

On April 6, 2023, Roberta Culp moved for a new trial. (DE 214.) Roberta argues that the jury's award of one dollar in nominal damages goes against the weight of the evidence because "no reasonable juror could conclude that experiencing painful burning in one's eyes for fifteen

---

[4] Carl and Roberta also brought claims against other defendants, but those claims were dismissed and are not relevant to this order.

(15) minutes is not worth compensation." (DE 215 at 1.) Under Rule 59(a)(1), a "court may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). A motion for a new trial may be granted if the verdict was against the manifest weight of the evidence. *Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011). In considering "whether the verdict was against the manifest weight of the evidence, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) (citation and quotation marks omitted). "[A] court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 313–14 (7th Cir. 2011) (quotations omitted).

The Seventh Circuit has indicated that "nominal damages may be appropriate where a jury reasonably concludes that evidence concerning the plaintiffs' injuries was not credible." *Briggs v. Marshall,* 93 F.3d 355, 360 (7th Cir. 1996). Furthermore, "nominal damages may be appropriate where the victim's injuries have no monetary value or are insufficient to justify with reasonable certainty a more substantial measure of damages." *Id.*

In *Briggs*, the Seventh Circuit affirmed a district court's decision to only award nominal damages. The lower court concluded that the jury's award of nominal damages was supported, reasoning that "the jury could have reasonably concluded that the plaintiffs' evidence concerning their injuries was not credible [because] nearly all the evidence regarding damages consisted of the Plaintiffs' own testimony [and] none of the Plaintiffs provided medical testimony regarding the extent of their physical injuries [or] [o]bjective medical proof of . . . pain and suffering . . . ."

*Briggs v. Marshall*, 881 F. Supp. 414, 417 (S.D. Ind. 1995), *aff'd*, 93 F.3d 355 (7th Cir. 1996). The court also found that "the jury could have permissibly awarded nominal damages simply because they were unable to place a monetary value on the harm that the Plaintiffs suffered" given that the evidence only showed low-level force, such as "slapping, shoving, and pulling hair[.]" *Id.* Other courts have also held that jury verdicts awarding nominal or no damages were supported where the plaintiff provided "little, if any[,] evidentiary guidance on damages." *Moore v. Hamilton Se. Sch. Dist.*, No. 111CV01548SEBDML, 2014 WL 12755906, at *4 (S.D. Ind. May 16, 2014) ("Plaintiff presented no evidence tied to the loss of educational opportunity or guidance to the jury on how they might go about calculating such damages.").

Like *Briggs* and *Moore*, Roberta did not provide objective medical evidence regarding how the jury would go about calculating damages as to any pain and suffering caused by the pepper spray. Roberta testified that she received no warning before being pepper sprayed and that, upon being pepper sprayed, the burning was immediate. In regard to the degree of pain, she testified that her "eyes were burning badly" and were "burning like crazy" even after she later left the vehicle and went inside. Even though Roberta testified about being pepper sprayed, the Plaintiffs did not present any objective medical evidence regarding the degree of injuries to Roberta. For example, no nurse or doctor testified that Roberta's eyes were red and inflamed after the incident. Nor was there any evidence that these injuries required any treatment from a medical professional. Since the only evidence presented regarding Roberta's injuries was her own, and no outside medical testimony was given on her injuries, the jury could have reasonably concluded that her testimony regarding her degree of pain was not credible.

Furthermore, the jury could have found that Roberta's testimony about the amount of pain she experienced conflicted with other portions of her testimony. Roberta testified that after

being pepper sprayed, she "couldn't see" and that her eyes "were burning badly." But she also testified that after she was pepper sprayed, she was able to comply with the directions of the officers to get out of the car. At that point, she got her dog from the back seat and walked up to Mind-Body. That Roberta was able to see well enough to get out of her car to grab her dog, then walk up to the building, weighs against her prior testimony. After all, a reasonable juror could believe that she was not telling the truth that she could not see as a result of the pepper spray, since she was able to quickly get out of the car, grab her dog, and head into the building.

Other courts have similarly found that a nominal damages award was supported where the individual received no diagnosis or treatment for the pepper spray and that there was some reason to find that the individual's testimony was not credible. *See Girbes-Pierce v. City of New York*, 803 Fed. Appx. 509, 512 (2d Cir. 2020) ("Given that Girbes-Pierce's credibility was impeached by defense counsel at trial, the jury could have concluded that Girbes-Pierce's own reporting of his symptoms was unreliable and that the absence of any diagnosis or treatment for pepper spray indicated solely injuries that lacked monetary value.").

Based on the above, the Court finds that the jury's nominal damages award was not against the manifest weight of the evidence. Accordingly, a new trial is not warranted.

### 2.  *Notice of Costs*

Roberta Culp and the Defendants both argue that they are entitled to recover costs under Federal Rule of Civil Procedure 54(d)(1). Rule 54(d)(1) provides, in relevant part: "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ .P. 54(d)(1). "A party prevails for purposes of Rule 54(d) when a final judgment awards it substantial relief." *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009) (per curiam); *see also Northbrook*

*Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 641 (7th Cir. 1991). "When one party gets substantial relief it 'prevails' even if it doesn't win on every claim." *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir. 1999).

Rule 54(d) creates a presumption in favor of awarding costs to a prevailing party, but the presumption can be overcome. *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 666 (7th Cir. 2014). One situation where this presumption is often overcome is when the case resulted in a "mixed outcome," where each side prevails in some respects. *Testa v. Vill. of Mundelein, Ill.*, 89 F.3d 443, 447 (7th Cir. 1996) (finding that because of the "mixed outcome of the civil rights and malicious prosecution claims, the decision requiring each party to bear its own costs" was within the discretion of the district court); *Ello v. Brinton*, No. 2:14-CV-299-TLS, 2019 WL 6975093, at *1 (N.D. Ind. Dec. 20, 2019) ("[I]n a case with mixed results, the district court retains especially broad discretion to award or deny costs.").

Here, there was a mixed outcome. At summary judgment, the Court dismissed several claims, including Roberta's claims under the ADA and Rehabilitation Act, as well as Roberta's claims for excessive force, against both Defendants. The Court also dismissed several other defendants from the suit. However, the Court allowed Roberta's state law claims for assault and battery to proceed against Officer Woods and Officer Schulien. The jury then found in favor of Roberta on one of her state law claims, for battery against Officer Woods. Meaning, Roberta lost on seven of her claims against the Defendants and won on only one claim.[5] Furthermore,

---

[5] Four of Roberta Culp's claims were dismissed at summary judgment: two claims against the defendants under Section 202 of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act (one claim against Officer Schulien and one against Officer Wood), as well as two excessive force claims under Section 1983 (one against Officer Schulien and one against Officer Wood). Roberta then had four claims proceed to trial: (1) assault by Officer Schulien; (2) assault by Officer Woods; (3) battery by Officer Schulien; and (4) battery by Officer Woods.

Roberta only received $1 in nominal damages. As to Carl, the Defendants prevailed on the ADA claims, the Rehabilitation Act claims, the excessive force claims, and the state law claims.

The Court finds that each party should bear their own costs. Courts often require parties to bear their own costs when there is a mixed outcome. *Gonzalez v. City of Elgin*, No. 06 C 5321, 2010 WL 4636638, at *2 (N.D. Ill. Nov. 8, 2010) (explaining that the parties "must bear their own costs" because "the jury's verdict was mixed" and courts have especially broad discretion to award or deny costs in mixed result cases). Even in cases where a plaintiff only won a portion of their case, and their damages award was relatively small, courts have required each party to bear their respective costs. *See Testa*, 89 F.3d at 447 (mixed outcome and court denied costs to the plaintiff when plaintiff lost on false arrest claim, but won $1,500 on malicious prosecution claim).

In an analogous case, a plaintiff brought claims for excessive force and inadequate medical treatment claims against a city and two police officers. *Ellis v. Country Club Hills*, No. 06 C 1895, 2011 WL 6001148, at *1 (N.D. Ill. Dec. 1, 2011). After summary judgment, the only claims that proceeded were excessive force claims against the two officers. *Ellis v. Country Club Hills*, No. 06 C 1895, 2012 WL 4009701, at *1 (N.D. Ill. Sept. 12, 2012). A trial took place and the jury returned a verdict in favor of the plaintiff on only one of his claims, awarding damages of $1.00. *Id.* The court held that, under these circumstances, "neither Defendants nor Plaintiff prevailed as to a 'substantial' part of the litigation" and that the "appropriate disposition" was for "the parties [to] bear their own costs." *Id.* at 2.

This case is very similar to *Ellis*. Like that case, certain defendants were dismissed at summary judgment. Also like that case, the Plaintiff here, Roberta, only won one claim at trial

and was only awarded $1.00. Because the facts in *Ellis* are very similar to those presented here, the Court finds the outcome of that case to be highly persuasive.

Given that parties are often required to bear their own costs when there is a mixed outcome, and because the facts of this case are very similar to the facts in *Ellis*, the Court finds that the parties are each required to bear their own costs. *See Hugunin v. Land O'Lakes, Inc.*, No. 11 C 9098, 2015 WL 12834301, at *3 (N.D. Ill. Nov. 9, 2015) ("[T]he more common result in a mixed result case is that neither side recovers costs."); *Lally v. City of Chicago*, No. 10 C 5011, 2013 WL 1984422, at *12 (N.D. Ill. May 13, 2013) ("[T]his case was very clearly a mixed result case and thus would be an appropriate occasion to deny each side's bill of costs.").

### 3. Attorneys' Fees

Roberta Culp also argues that her attorneys are entitled to attorneys' fees under 42 U.S.C. § 1988. Section 1988 allows for the recovery of reasonable attorneys' fees to a "prevailing party" other than the United States "in any action or proceeding to enforce" a number of civil rights statutes, including 42 U.S.C. § 1983. 42 U.S.C. § 1988. Even though both Rule 54(d)(1) and § 1988 use the term "prevailing party," the "standard for determining a prevailing party under section 1988 is different." *Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017). A prevailing party for the purposes of section 1988 is one who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *King v. Illinois State Bd. of Elections*, 410 F.3d 404, 414 (7th Cir. 2005).

The Court finds that Roberta is not a prevailing party for the purposes of Section 1988. At summary judgment, the Honorable Judge Lee dismissed Roberta Culp's excessive force claim under 42 U.S.C. § 1983, explaining that "there [was] no evidence that any force was used against her by anyone." (DE 102 at 10 n.3.) Judge Lee found that Roberta Culp's state law claims for

assault and battery claims could proceed. (*Id.* at 20.) As to Roberta, the trial proceeded only on these state law claims. Because the Court dismissed Roberta Culp's claim under 42 U.S.C. § 1983, she did not prevail on her constitutional claim and so her attorneys are not entitled to fees under 42 U.S.C. § 1988.

The Plaintiffs argue that Judge Lee erred in his summary judgment order by dismissing Roberta Culp's excessive force claim under 42 U.S.C. § 1983. However, prior to trial, they never asked the Court to reconsider that order. Furthermore, after trial, the Plaintiffs did not request that this Court amend the judgment under Rule 59(e) due to this alleged error. Even in the instant motion, Plaintiffs do not request Judge Lee's order be reconsidered. Rather, Plaintiffs argue that this Court has already "recognize[d] that the remaining battery claim was the *legal functional equivalent*" of the claim for excessive force. (DE 210 at 6.) Plaintiffs do not define what the term "legal functional equivalent" means in this context or provide any case law in support. Given that Plaintiffs have not developed what they mean by a "legal functional equivalent," the argument is waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .").

Even if the Court gives the Plaintiffs the benefit of the doubt and assumes that they are asserting the Court reconsidered the prior decision by Judge Lee *sub silentio* when it allowed the battery claim to proceed, their argument still fails. *See* Sub Silentio Definition, *Black's Law Dictionary* (11th ed. 2019) ("Under silence; without notice being taken; without being expressly mentioned."). First, it's clear from the record that an excessive force claim was not proceeding. No party ever asked the Court to reconsider Judge Lee's order prior to trial; no party raised this issue at the Final Pretrial Conference; and no trial document, such as the preliminary jury

instructions, final jury instructions, and verdict form, included any indication that Roberta Culp's claim for excessive force was still alive.

The Plaintiffs point to two portions of the jury instructions that they believe indicate that the battery claim was the "legal functional equivalent" of a claim for excessive force. But neither of these portions of the jury instructions indicate that the Court had reconsidered Judge Lee's prior dismissal of the excessive force claim.

 First, the Plaintiffs point to the portion of the battery instruction which instructed the jury that "if you find that the defendant officers reasonably believed that the use of force was necessary to effect a lawful arrest or apprehension, and the force used was not excessive, then the plaintiffs may not recover for the battery." (DE 210 at 8.) Rather than indicating that a separate constitutional claim remained, this portion of the instruction was necessary to ensure that the battery claim was not barred by Indiana Tort Claims Act. *Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010) (finding that the Indiana Tort Claims Act's law enforcement immunity did not apply to the torts of assault and battery "[i]f an officer uses unnecessary or excessive force . . . .").

Second, Plaintiffs point to the fact that the verdict form allowed for nominal damages to be awarded for Roberta. Plaintiffs argue that this shows that a constitutional claim was involved because under Indiana law liability "on an ordinary battery claim wouldn't require any damages award if no actual compensatory damages were proved." (DE 210 at 9.) Again, Plaintiffs cite no case law in support of this assertion, so this argument is waived. *Berkowitz*, 927 F.2d at 1384. Even if such an argument had been raised, Indiana case law indicates that nominal damages are required if an individual is found liable for a battery. *Singh v. Lyday*, 889 N.E.2d 342, 360–61 (Ind. Ct. App. 2008) ("However, we point out that damages are not foreclosed, and remand is therefore not futile, as wherever there is a wrong, there is a remedy to redress it; and that every

injury imports damage in the nature of it; and, if no other damage is established, the party injured is entitled to a verdict for nominal damages."); *McGlone v. Hauger*, 56 Ind. App. 243 (Ind. Ct. App. 1914) ("Nor was it necessary for appellee to prove damages before she could recover for such trespass on her person, for the law *will presume* that nominal damages at least result from such a civil wrong.").

Rather than *sub silentio* reconsidering Judge Lee's order, this Court was merely silent. Neither party asked this Court to reconsider that order, so its dismissal of Roberta Culp's excessive force claim remained in place. Judge Lee simultaneously dismissed Roberta Culp's excessive force claim finding that "there is no evidence that any force was used against her by anyone" while allowing for a battery claim to proceed. Even if that conclusion was inconsistent, in the more than two years since Judge Lee's order was issued, the Plaintiffs never asked for this Court to reconsider that order. Even now, the Plaintiffs do not ask for this Court to reconsider Judge Lee's dismissal. Instead, their argument is solely that the battery claim is the "legal functional equivalent" of the excessive force claim. As explained above, this argument is undeveloped and, to the extent Plaintiffs are arguing that this court *sub silentio* reconsidered Judge Lee, they are simply incorrect.

Accordingly, because Judge Lee dismissed Roberta's section 1983 excessive force claim, because no party has ever requested that this Court reconsider this decision, and because only Roberta's state law claims were considered at trial, the Court finds that Roberta is not a prevailing party under section 1988.

Even if Roberta were a prevailing party, her attorneys would not be entitled to attorneys' fees. The jury only awarded Roberta nominal damages. While a win of nominal damages for a section 1983 claim would make Roberta a "prevailing party" entitled to reasonable attorney's

fees, a reasonable attorney's fees "for a nominal victor is usually zero." *Aponte v. City of Chicago*, 728 F.3d 724, 727 (7th Cir. 2013) (citation omitted). In deciding what is a "reasonable fee for a de minimis victory," the court considers three factors set forth by Justice O'Connor in *Farrar v. Hobby*, 506 U.S. 103 (1992) (O'Connor, J., concurring): "(1) the difference between the amount recovered and the damages sought, (2) the significance of the issue on which the plaintiff prevailed relative to the issues litigated, and (3) whether the case accomplished some public goal." "Of these three factors, the sum awarded-versus-requested . . . is the most important." *Aponte*, 728 F.3d at 731. In other words, the Court must determine if "the plaintiff was aiming high and fell far short." *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997).

The sum awarded here was insignificant in comparison to the amount sought. The Seventh Circuit has said that a district court was reasonable to conclude that a recovery of "just 0.4% of the compensation" requested "is trivial." *Aponte*, 728 F.3d at 736. In another case, the Seventh Circuit found that $ 1.00 in nominal damages, "one one-hundred thousandth of the amount he sought . . . clearly militates against an award of attorney's fees." *Maul v. Constan*, 23 F.3d 143, 145 (7th Cir. 1994). In their closing, the Plaintiffs asked for "no less than $50,000 for Roberta Culp." Meaning, that the amount recovered was one fifty thousandth of the amount sought (.002%). The substantial difference between the requested and awarded amounts weighs heavily against awarding attorneys' fees. *See Briggs v. Marshall*, 93 F.3d 355, 361 (7th Cir. 1996) (difference between the requested $75,000 in compensatory damages plus punitive damages and jury award of a total of four dollars was "substantial" and weighs against fees).

The Plaintiffs argue in their brief that "the Court shouldn't anchor on the originally stated $50,000.00 amount as the recovery sought because she converted her ask to an open plea for damages in any amount" because they asked that the jury keep an open mind." (DE 210 at 11–

12.) But Plaintiffs admit that they requested the jury award no less than $50,000, both in their opening and closing. Asking the jury to keep an open mind in a closing does not erase the fact that the Plaintiffs, in explicit terms, requested that amount.

The second factor is the "significance of the legal issue on which the plaintiffs succeeded," but this factor is "the least significant of the three." *Briggs*, 93 F.3d at 361. The Plaintiffs assert that Roberta won 50% of her claims. This is odd, considering her constitutional claims for excessive force against both Officer Woods and Officer Schulien were dismissed at summary judgment, and because the jury did not find the defendants liable on three of the state law claims. But even accepting as true Plaintiffs claim that Roberta somehow won her constitutional claim since it was "co-extensive" with her battery claim, or was the "legal functional equivalent," this factor is the least important of the three and would "only minimally advance" the argument for attorney's fees. *Maul*, 23 F.3d at 146.

"The third factor considers the public purpose served by plaintiffs' suit, assessing principally whether plaintiff's victory vindicated important rights and deterred future violations." *Id.* (citation and quotation marks omitted). However, this factor is "not satisfied simply because [a] plaintiff establishes that his constitutional rights have been violated." *Id.* Rather, the award of minimal damages must reflect more than "mere personal victory" and have some "broader import to the public." *Aponte*, 728 F.3d at 731. For example, punitive damages that serve the public "by punishing those who willfully or with reckless abandon trample on the guarantees afforded by the United States Constitution." *Maul*, 23 F.3d at 146. Furthermore, an action on behalf of a class of individuals might aid the public by establishing rights more generally. *Id.* But these factors are not evident here. Roberta was proceeding individually, seeking to remedy her own injuries. Furthermore, the relief awarded to Roberta was only nominal damages, with no

award of compensatory damages, let alone punitive damages. Accordingly, the third factor also weighs against awarding fees to Roberta's attorneys.

The Court notes that much of the Plaintiffs' argument as to the third *Farrar* factor is focused on Judge Lee's summary judgment opinion. For example, the Plaintiffs contend that Judge Lee erred by dismissing their claims under Title II of the ADA and the Rehabilitation Act. The plaintiffs then argue that "[s]uch questions have been directly presented and their resolution would be of tremendous benefit to the disability community, the law enforcement community, the judiciary, and the American people as a whole." (DE 210 at 18.) But the third *Farrar* factor focuses on whether Plaintiff's *victory* vindicated important rights and deterred future violations, not whether questions that may be advanced on appeal might vindicate important rights. As it stands now, the claims under Title II of the ADA and the Rehabilitation Act were dismissed by Judge Lee at summary judgment and do not provide any support to Plaintiff's argument regarding to the third *Farrar* factor.

The Plaintiffs also argue that the victory will benefit future victims because Officer Woods will now have a battery on his file and that this could aid other litigants by providing support for a *Monell* claim based on "lack of training or policy leading to these unfortunate types of situations." (DE 210 at 18.) But such a result would likely be present in any successful individual suit where a constitutional right was involved. For example, in *Aponte v. City of Chicago*, the jury awarded a plaintiff nominal damages on a claim that officers unreasonably executed a warrant. 728 F.3d 724, 731 (7th Cir. 2013) The Seventh Circuit affirmed the district court's conclusion that this "victory merely vindicated his own personal rights." *Id.* Like this case, the individual officers illegal search would likely have been in their "file" and could have potentially served in support of a future *Monell* claim. But the Seventh Circuit affirmed the

district court's denial of attorney's fees, explaining that this "reflected a mere personal victory without any identifiable, broader import to the public." *Id.*

At least two of the three *Farrar* factors weigh heavily against an award of attorneys' fees. Accordingly, even if the Plaintiffs were correct that Roberta was a prevailing party, the Court would find that the attorneys are not entitled to a fee.

### 4. *Motion for Sanctions*

The Plaintiffs have filed a motion seeking sanctions against Defendant Stevan Schulien under Federal Rule of Civil Procedure 26 and 37. Rule 26(e)(1) and (2) require a party to supplement or amend its disclosures and discovery responses if it learns that the information disclosed or the response is "incomplete or incorrect, and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).[6] To enforce those requirements, Rule 37(c)(1) provides that "if a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, *unless* the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). In addition or instead of this sanction, the Court may order payment of attorneys' fees, inform the jury of the party's failure, or impose other appropriate sanctions. *Id.*

Plaintiffs' request for sanctions stems from an allegedly incomplete or incorrect answer Officer Schulien gave in response to an interrogatory and in depositions. (DE 217.) In his

---

[6] The Court notes that the Plaintiffs also briefly argue that sanctions are mandatory under Federal Rule of Civil Procedure 26(g). However, this rule does not apply to the failure to supplement. *See* 8A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2052 (3d ed.) ("Rule 26(g)(1) by its terms applies only to disclosures pursuant to Rule 26(a)(1) and (a)(3), but not as required by Rule 26(e)(1), an addition the drafters clearly knew how to make in a related rule [Rule 37(c) ].").

response to Plaintiffs' interrogatories, when asked for "any and all reasons you did or did not audio or video record during your time at the Scene," Officer Schulien responded with "[s]hut car off." (DE 217-1 at 3.) Then, at a deposition, Officer Schulien again responded that he turned his car off when he reached the scene. (DE 217-2 at 90:8–9.) However, at trial, Officer Schulien changed his answer, explaining that even though he believed that he turned his car off when he arrived at the scene "during the course of [the] litigation," the car "apparently" was not turned off because he "saw Sergeant Griffin go back and flip the lights on." Officer Schulien also testified that he had been unfamiliar with the ability to record after the fact at the time of the incident, despite being a veteran of almost 20 years.

According to the Plaintiffs, Officer Schulien should have supplemented his interrogatory prior to trial to indicate that he thought his car was on and that he was not familiar with all of the recording abilities of his video camera. The Court will assume that Officer Schulien should have supplemented his interrogatory. But, even with this assumption, the Court does not believe that sanctions are needed, since the failure to supplement appears to have been harmless.

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996). There are four factors which the Court considers when determining whether a failure to supplement is harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

As to the first factor, the Plaintiffs first argue that they "could not have been more surprised" by Officer Schulien's answer at trial. (DE 217 at 11.) However, in a deposition of Officer Schulien by the Plaintiffs, he provided answers which indicated he was not entirely sure that the car was off:

| | |
|---|---|
| **Ms. Surrisi:** | Is it possible your lights are on? Do you see the reflection of your lights in that car. . . The headlights of your vehicle? |
| **Officer Schulien:** | Appears that way, I see headlights. |
| **Ms. Surrisi:** | Would your headlights be on if you had shut off your car? |
| **Officer Schulien:** | I don't know. |
| **Ms. Surrisi:** | Would your windshield wipers be running if you had shut off your car? |
| **Officer Schulien:** | I wouldn't think so . . . . |

(DE 217-2 at 91:5–17.) By expressing that the windshield wipers of his police vehicle would not have likely been running if the car was off, Officer Schulien was expressing doubt about whether the car was on or off. This constitutes some indication that Officer Schulien might testify differently come trial upon further examination of the available videos. Furthermore, the Plaintiffs were proceeding under the assumption that the car was, in fact, on, and advanced that position in support of their request for a spoliation instruction. That Officer Schulien might change his answer at trial, once he watched certain videos of the day-in-question and heard testimony from other witnesses, should not have been all that surprising given Officer Schulien's prior deposition and the fact that the Plaintiffs believed the car was on despite Officer Schulien's answer to the interrogatory.

The Plaintiffs also argue that they were prejudiced because they "drafted and responded to papers regarding spoliation." (DE 217 at 11.) According to the Plaintiffs, they would not have expended the "time and effort of fighting for a spoliation instruction" if Officer Schulien had supplemented his discovery responses to advise that the car was on and that he didn't know how

18

to use the record after the fact technology. (DE 226 at 14.) There are two flaws with this argument.

First, if Officer Schulien had supplemented his discovery responses to advise that the car was on, then this would make it *more* likely that the Plaintiffs would have sought a spoliation instruction. In their depositions, both Defendants provided statements indicating that the car recorded continuously when on. In Officer Woods' deposition, he testified that there were four ways a police car's recording would be marked to be saved: (1) when he activated his car's "lights"; (2) when he hit his "mic" button; (3) when he pressed the "record button on the in-car camera itself"; and (4) when he "record[ed] after the fact," which meant that he could, at some later point, go back and save the video. (DE 164-1 at 13:13–17:9.) The Plaintiffs request for a spoliation instruction hinged on the car being turned on because, if the car was on, the Officers could have gone back and "recorded after the fact." (DE 122 at 17–18 ("Plaintiffs believe Defendants deliberately avoided saving the initial videos of the encounter with Carl Culp for fear of having others see what the videos contained[.]").) If Officer Schulien had supplemented his interrogatory to say that the car was, in fact, on, then this is entirely consistent with Plaintiffs' theory of spoliation. Meaning, Officer Schulien amending his interrogatory answer to say that the car was on would have made a spoliation instruction more justified, not less.

The second flaw in this argument is Plaintiffs' representation that they did not know of Officer Schulien's ignorance regarding the record-after-the-fact technology. This is simply not true. There were already substantial indications prior to trial that Officer Schulien did not have a complete understanding of the record after-the-fact technology, and yet the Plaintiffs still brought their request for a spoliation instruction. For example, at Officer Schulien's deposition on January 20, 2020, Ms. Surrisi had the following exchange with him about the camera system:

| | |
|---|---|
| **Ms. Surrisi:** | It's running continuously? |
| **Officer Schulien:** | Correct. |
| **Ms. Surrisi:** | But it only records when it's activated? |
| **Officer Schulien:** | Correct. |
| **Ms. Surrisi:** | How is it activated? |
| **Officer Schulien:** | It can be activated when the lights and sirens are engaged or if I activate it or if it's activated by the officer. |
| **Ms. Surrisi:** | Okay. So when is it supposed to be on. |
| **Officer Schulien:** | When it's . . . when the lights and sirens are activated. |
| **Ms. Surrisi:** | So is there a policy that Fort Wayne has about when your in-car camera is on? |
| **Officer Schulien:** | When it's supposed . . . when lights and sirens. |

(DE 217-2 at 32:13–33:1.) Not only did Officer Schulien display some confusion about when the recordings were activated, but he also never brought up the record-after-the-fact function of the system in his deposition.

Despite Officer Schulien displaying a lack of knowledge regarding how videos were recorded during his deposition, Plaintiffs still proceeded to raise their arguments regarding spoliation of evidence. Importantly, the Plaintiffs proceeded down this path despite the fact that some bad faith is required for a spoliation instruction to be given. *See Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013) ("When a party intentionally destroys evidence in bad faith," a court "may instruct the jury to infer the evidence contained incriminatory content."). The Court sees no reason why Officer Schulien supplementing his interrogatory answer to say he was unfamiliar with record-after-the-fact technology would have altered Plaintiffs' choice to pursue a spoliation instruction, given that they already knew about this ignorance from his deposition, yet opted to pursue it anyway.

In a similar vein, the Plaintiffs argue that the failure of Officer Schulien to supplement his answer with a statement that "he had never used Record After the Fact Technology would've prompted [the Plaintiffs] to do additional discovery on that issue." (DE 226 at 14.) Plaintiffs maintain that if Officer Schulien indicated in his answer to the interrogatory that he did not have

"knowledge of record after the fact technology, they would've sent non-party requests for production of documents to the Allen County Prosecuting Attorney's Office for any such video files that Officer Schulien has provided in support of criminal cases [and] would have deposed the Fort Wayne staff about any such training Stevan Schulien would have received on that technology." (DE 226 at 14.)

This argument is also unconvincing. As explained above, the depositions already revealed that Officer Schulien was likely not knowledgeable about the record after-the-fact technology. If the Plaintiffs did not conduct further discovery after that deposition, the Court is skeptical that Officer Schulien changing his answer to the interrogatory would have resulted in the Plaintiffs conducting any further discovery. The Court's skepticism is reaffirmed by the fact that Plaintiffs did not pursue this type of information regarding Officer Schulien's training and knowledge, even though it was *their* burden to prove that the Defendants intentionally destroyed the video footage in bad faith. *See Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013) ("When a party intentionally destroys evidence in bad faith," a court "may instruct the jury to infer the evidence contained incriminatory content.").

The Plaintiffs also argue that they were prejudiced because they "had worked to secure impeachment evidence ready to disprove and discredit Stevan Schulien at trial." (DE 217 at 11.) Even if they were prejudiced by this to some degree, Plaintiffs had ample opportunity to cure this prejudice by impeaching Officer Schulien with his prior testimony, which is the second factor this court considers when determining if a failure to supplement is harmless. *David*, 324 F.3d at 857 (explaining that the second factor the court considers is the ability to cure the prejudice).

Plaintiffs *did*, in fact, cure any prejudice from lost impeachment evidence during the course of trial. Although Plaintiffs don't describe how they intended to impeach Officer

Schulien, presumably they were anticipating Officer Schulien getting on the stand, testifying that the "car was off," which the Plaintiffs would then undercut by proving that the car was, in fact, on. Instead, Officer Schulien testified the car was on. But the Plaintiffs were still able to impeach Officer Schulien using the transcript of his deposition:

| | |
|---|---|
| **Mr. Harper:** | Do you remember at a certain point during this case that you were given interrogatories . . . . |
| **Officer Schulien** | That's correct. |
| **Mr. Harper:** | And do you remember a question that you were asked, which was . . . any and all reasons you did or did not audio or video record during your time at the scene? And your response was "shut car off?" |
| **Officer Schulien**: | I remember writing "shut car off." I don't remember the exact question that was asked. |
| **Mr. Harper:** | But you didn't shut the car off because it was running, correct? |
| **Officer Schulien:** | Apparently, I didn't. |

Given that Plaintiffs were able to impeach Officer Schulien directly with his prior statements, the Court believes that any additional impeachment value had he testified consistently with his interrogatory would have been de minimis.

The third factor that this Court considers is "the likelihood of disruption at trial." Plaintiffs argue in a generic fashion that they were distracted with "new discovery during a time of heavy preparation and stress" and that it "interfered with the Culps' counsels' time and strategy during a critical time[.]" (DE 217 at 13.) But they do not indicate what new discovery they needed or how this interfered with their time and strategy. Furthermore, the only case that Plaintiffs cite in support, *White v. Gerardot*, 2008 LEXIS 70234 at *13-14 (N.D. Ind. 2008), is distinguishable. In that case, the plaintiff failed to disclose the identity of their expert and the expert's report. The disclosure occurred with only two months until trial, meaning that the defendants "would not only need to depose [the expert] but also need to find a rebuttal expert who also would likely be deposed." *Id.* at 12. The Court found that having to conduct this

discovery "with the trial just two months away and with numerous filings yet to be made, would distract [the defendant] from what is already a heavy trial preparation." *Id.* at 13. There is no indication that Plaintiffs would have been distracted in remotely the same manner as the defendant in *White* because Plaintiffs had already deposed Mr. Schulien and had the necessary impeachment evidence in hand: namely, his prior inconsistent statement that he shut the car off.

Finally, as to the last factor, the Court finds that there has not been a showing of bad faith by Officer Schulien in failing to supplement his interrogatory. In arguing that there was bad faith, Plaintiffs point to the following exchange during Officer Schulien's testimony:

| | |
|---|---|
| **Ms. Surrisi:** | I guess what I want to know is why is your testimony different yesterday than from today . . . when you signed your depositions and did your interrogatories? Why - - - |
| **Officer Schulien:** | I believed I had turned my car off. |
| **Ms. Surrisi:** | And in four years you didn't update or supplement your interrogatories. |
| **Officer Schulien:** | No one – it was never presented me to supplement it or update it. |

(DE 226 at 10.) The Plaintiffs argue that this exchange "shows that Stevan Schulien did not just figure out midtrial that his car was on because Stevan Schulien's answer to the question should have been I just figured it out during trial so I haven't had the chance to supplement." (*Id.*)

The Court disagrees. While Officer Schulien indicated that one reason he may have not supplemented his answer to this interrogatory was because he didn't realize he could supplement it, this was not the *only* reason he failed to. In the passage above, Officer Schulien indicated that another reason his answer changed by the time of trial was because he previously believed that the car was turned off. On redirect, Officer Schulien had the opportunity to clarify this:

| | |
|---|---|
| **Ms. Trier:** | Officer Schulien, did you during the course of this litigation think that you turned your police car off when you arrived on the scene. |
| **Officer Schulien:** | I did. |
| **Ms. Trier:** | And, apparently, it wasn't turned off? |
| **Officer Schulien:** | Apparently, it wasn't. |

| | |
|---|---|
| **Ms. Trier:** | Because we saw Sergeant Griffin go back and flip the lights on, correct? |
| **Officer Schulien:** | Correct. |

In other words, Officer Schulien explained multiple times that the reason his in-court testimony differed was because of the video he saw at trial containing Sergeant Griffin. Given this explanation for why Officer Schulien did not supplement his answer to the interrogatory, the Court finds that his failure to do so was not in bad faith.

The Court finds that each of the factors discussed above support a finding that any failure to supplement was harmless. Accordingly, the Court does not impose sanctions.

**D.     Conclusion**

For the reasons explained above, the Court DENIES Plaintiffs' motions for a bill of costs, attorney fees, a new trial, and sanctions. (DE 208; DE 209; DE 214; DE 216.) The Court also DENIES Defendants' motion for bill of costs. (DE 206.) Each party will thus bear their own costs. Given the denial of Defendants' request for costs, Plaintiffs' motion to strike Defendants exhibit in support of their bill of costs is now DENIED as moot. (DE 227.)

SO ORDERED.

ENTERED: June 15, 2023

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court